IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DAVID JACKSON,            ) | |
| )                          | |
| Plaintiff,                ) | |
| )                          | CIVIL ACTION NO. |
| vs.                       ) | 2:06-CV-0412-WHA |
| )                          | |
| E&R MANUFACTURING         ) | |
| COMPANY, INC., CARY MACKEY, ) | |
| BESSER COMPANY,           ) | |
| )                          | |
| Defendants.               ) | |

RECEIVED
2007 JUL 31  P 3: 03

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

## DEFENDANT BESSER COMPANY'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

I. **INTRODUCTION**

The plaintiff, David Jackson ("Jackson"), has asserted four Counts against defendant Besser Company ("Besser") in his Second Amended Complaint. In Count I, Jackson alleges defective product and failure to warn claims under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"). Count II alleges negligent design/distribution and negligent failure to warn. In Count III, Jackson alleges wanton design/distribution and wanton failure to warn. Count IV of the Second Amended Complaint "realleges the allegations of all previous paragraphs," but otherwise contains only generic allegations. As set forth more fully below, the undisputed facts show that Besser is entitled to summary judgment on each of these claims.

When Jackson worked at Couch Block USA ("Block USA") in Andalusia, Alabama, he would often reach his hand into the concrete block splitter's[1] side knife area—without shutting it

---

[1] The splitter is an E&R Manufacturing Company, Inc. model CM-24 Hydrofeed Return Corner block splitter (the "Splitter").



off—to remove debris created by the block-splitting process. It is undisputed that the Splitter ran automatically and split one block every three seconds. Further, Jackson admitted that he knew if the Splitter's side knives closed on his hand, he would suffer serious injury. On December 17, 2004, Jackson's glove became entangled on a bolt near the Splitter's side knives. Before he could pull his hand out of the glove and away from danger, the side knives closed, injuring Jackson's right hand.

Based on the undisputed facts, Besser is entitled to judgment as a matter of law pursuant to Federal Rule of Civil Procedure 56. Jackson's AEMLD, negligent and wanton failure to warn claims fail as a matter of law because the danger presented by the Splitter's side knives was open and obvious to Jackson, and even if Besser owed Jackson a duty to warn, he cannot prove that a breach proximately caused his injuries. In addition, Jackson's AEMLD claim for defective product and his claim for negligent design/distribution fail because Jackson assumed the risk of injury by reaching into the Splitter when he knew better, and was contributorily negligent. Thus, summary judgment is proper in this case.

## II. NARRATIVE SUMMARY OF UNDISPUTED FACTS

According to his Second Amended Complaint, at the time of his December 17, 2004 accident, Jackson was employed by Able Body Temp Services and worked at Couch Block USA ("Block USA") in Andalusia, Alabama. Ex. A [Second Am. Compl. at ¶ 5]. At the time of his accident, Jackson had worked as a laborer on the Block USA Splitter line for approximately three months. Ex. B [Jackson Dep. at 10: 16-19, 13: 4-11]. In general, his job duties included keeping the ground under and around the Splitter and conveyor clean, chipping blocks, pulling blocks and cleaning debris of out the Splitter. Ex. B [Jackson Dep. at 13: 4-11, 15: 4-10]. Jackson worked with Block USA employee, John Stephens, and under the supervision of its

2

plant Manager, Karry Mackey. Mr. Mackey has been the plant manager at Block USA for the past 17 years. Ex. C [Mackey Dep. at 14: 1-6].

Debris occurs as a normal part of splitting block with an automatic splitter. The Splitter is fed blocks from a conveyor and cycles automatically every three seconds. Ex. B [Jackson Dep. at 38: 18-20, 153: 13-15]; Ex. D [Stephens Dep. at 91: 4-6]. On a typical day, Block USA will split between 5,000 and 6,000 blocks, depending on demand. Ex. C [Mackey Dep. at 29: 1-4]; Ex. D [Stephens Dep. at 37: 3-6]. On the day of Jackson's accident, Block USA was splitting eight-inch Diamond Pro Bevel retaining wall blocks. Ex. D [Stephens Dep. at 19: 1-8]; Ex. B at Ex. 7 [Jackson Dep. at Ex. 7, Photo of Diamond Pro Bevel Block]. The Splitter produces "split face" blocks, which have a rough or textured appearance. Ex. D [Stephens Dep. at 21: 1-11]; Ex. B at Ex. 7 [Jackson Dep. at Ex. 7, Photo of Diamond Pro Bevel Block]. With a beveled block, such as the Diamond Pro Bevel, the Splitter's sides knives are configured at an angle to cut out a wedge or "chunk" from the block, creating the bevel shape and style. Ex. D [Stephens Dep. at 24: 3-20]; *see id.* When the block is pushed through the Splitter, the "chunks" are normally pushed through with the block—well away from the Splitter's knives—and discarded by a laborer like Jackson, a job Mr. Stephens described as the "chunk puller" position on the Splitter line. Ex. C [Mackey Dep. at 67: 17-19]; Ex. D [Stephens Dep. at 86: 17-22].

Jackson testified that on the day of his accident he was familiar with the Splitter and that he knew how to clean it out. Ex. B [Jackson Dep. at 13: 15-23]. Further, Jackson knew how to shut off the Splitter and testified that nothing prevented him from doing so on the day of his accident. Ex. B [Jackson Dep. at 24: 2-20]. When Jackson first began work at Block USA, he was warned by Karry Mackey that the Splitter could cut off a person's fingers. Ex. B [Jackson Dep. at 48: 1-12]. Indeed, Mr. Mackey showed Jackson his right hand, which was missing the

3

middle, ring and little fingers, and explained to him that he had lost his fingers on the Splitter and that Jackson should be careful. Ex. B [Jackson Dep. at 48: 1-12]; Ex. C [Mackey Dep. at 56: 18-23]. After receiving Mr. Mackey's warning, Jackson testified that its effect on him was to be careful. Ex. B [Jackson Dep. at 146: 16-23].

In addition to being warned by Mr. Mackey, Jackson testified that he had seen the sign on the Splitter that read "Keep Hands Clear" before his accident. Ex. B [Jackson Dep. at 33: 14-20, 81: 2-5]; Ex. B. at Ex. 5. Jackson testified that he understood the warning sign and that it meant to him to keep his hands clear of the Splitter while it was operating. Ex. B [Jackson at 32: 17-23].

On December 17, 2004, Jackson was engaged in his usual job duties on the Splitter line. Ex. B [Jackson Dep. at 51: 3-19, 52: 3-8]. As Jackson explained the accident, "when I was working I had been doing this for all along for the last two-and-a-half months off and on, everything. So I got pretty- - I mean, you get comfortable with what you're doing…So when I was reaching there to get this debris out, there was this piece that was hung up in there. And I was trying to get it out so that knife could come over. And as I was coming out, the corner of my glove got caught on that daggum bolt and side knife right there together, and that's how my hand got hung up to begin with." Ex. B [Jackson Dep. at 51: 3-14]. Jackson further testified, "that's when- - when I was starting to come out is when everything got hung up and my glove got hung up and the machine started pushing my hand. I tried to snatch my hand out of my glove and I couldn't get it out. So that's how it happened." Ex. B [Jackson Dep. at 52: 3-8]; Ex. B at Ex. 4[2]. Jackson sustained injuries to his hand and was taken to the Andalusia Regional Hospital where he received treatment. Immediately after the accident, Jackson admitted to Mr. Stephens, and

---

[2] Jackson marked the letter "H" on Exhibit 4 to his deposition, indicating the area where his hand was injured on the Splitter's side knives. Ex. B [Jackson Dep. at 83: 18-23].

later at the hospital emergency room to Mr. Mackey, that he knew better than to stick his hand in the Splitter and that the accident was his fault. Ex. D [Stephens Dep. at 67: 1-12]; Ex. C [Mackey Dep. at 51: 15-23].

Jackson testified that he was aware of the danger presented by the Splitter's side knives and by placing his hands near the side knives:

> Q: But you had seen that block being split before, correct?
> A: After I started working there, yes, sir.
> Q: And had you seen the side knives split the block before your accident?
> A: Yes.
> Q: So you saw that the side knives were sharp, correct?
> A: I wouldn't say they were sharp...they are a blunt-type blade.
> Q: If you put your hand in there and [the] side knives closed, would it injure your hand?
> A: *Well, of course*.
> Q: And you knew that before this accident, didn't you?
> A: *Of course, I knew that*.

Ex. B [Jackson Dep. at 20: 5-23].

In addition, Jackson testified that he was aware of the danger involved in cleaning debris with his hand, trying to beat the Splitter's three-second cycle:

> Q: Every time before this, were you trying to beat the cycle? In other words, when you put your hand in there you knew if you didn't get it out quickly, something could happen?
> A: *Why sure*.

Ex. B [Jackson Dep. at 53: 7-11].

> Q: You knew that if you didn't beat the cycle, it would injure your hand badly; isn't that true?
> A: Well, *it's just commonsense*, but yes.

Ex. B [Jackson Dep. at 43: 11-14].

### III. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Chase v. Kawasaki Motors Corp., U.S.A.*, 140 F.Supp.2d 1280, 1284 (M.D. Ala. 2001).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Id.* The moving party "can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof." *Id.*

"Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* "To avoid summary judgment the nonmoving party must do more than show there is some metaphysical doubt as to the material facts." *Id.* However, "the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor." *Id.*

"After the moving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.*

IV. **LEGAL ARGUMENT**

    A.    **Jackson's Failure To Warn Claims Each Fail As A Matter Of Law.**

Jackson's AEMLD, negligent and wanton failure to warn claims each fail for two reasons: (1) the danger presented by the Splitter's side knives was open and obvious to Jackson; and (2) even if Besser owed Jackson a duty to warn, he cannot prove its breach was the proximate cause of his injuries.

"Under the AEMLD, where a duty to warn is imposed by law on a manufacturer or seller, a product sold without an adequate warning is defective." *Chase v. Kawasaki Motors Corp., USA*, 140 F.Supp.2d 1280, 1287 (M.D. Ala. 2001). To succeed on an AEMLD failure to warn claim, the plaintiff must prove, "(1) the defendant [was] under a duty to warn the [plaintiff] regarding the product-in-question's danger when used in its intended or customary manner, (2) the warning the defendant provided breached that duty because it was inadequate, and (3) the breach proximately caused the [plaintiff's] injuries." *Id.* Similarly, to make out a prima facie case for negligent failure to give an adequate warning, the plaintiff must prove that the defendant breached a duty, and that breach proximately caused the plaintiff's injuries. *Gurley v. American Honda Motor Co., Inc.*, 505 So.2d 358, 361 (Ala. 1987); *see Abney v. Crosman Corp.*, 919 So.2d 289, 296 (Ala. 2005) (holding that when a negligent failure to warn claim fails because the danger is open and obvious, so too does a wanton failure to warn claim).

      1.    *The Danger Presented By The Splitter's Side Knives Was Open And Obvious To Jackson.*

A seller "is under no duty to warn a user of every danger which may exist during the use of the product, *especially where the danger is open and obvious.*" *Gurley*, 505 So.2d at 361 (emphasis added). The duty to warn extends only to those dangers a user "would not be aware of under the particular circumstances of his use of the product in question." *Brest v. Chrysler Corp.*, 939 F.Supp. 843, 849 (M.D. Ala. 1996); *see Abney v. Crosman Corp.*, 919 So.2d 289, 294 (Ala. 2005). Thus, a seller "is under no duty to warn when the danger associated with a product

is obvious." *Brest*, 939 F.Supp. at 849; *Abney*, 919 So.2d at 294. Whether a danger is open and obvious depends on the plaintiff's subjective knowledge. *Abney*, 919 So.2d at 295.

Here, the danger presented by the Splitter's side knives was open and obvious to Jackson. Jackson testified that he was well aware of the danger presented by placing his hands near the Splitter's side knives:

> Q: But you had seen that block being split before, correct?
> A: After I started working there, yes, sir.
> Q: And had you seen the side knives split the block before your accident?
> A: Yes.
> Q: So you saw that the side knives were sharp, correct?
> A: I wouldn't say they were sharp...they are a blunt-type blade.
> Q: If you put your hand in there and [the] side knives closed, would it injure your hand?
> A: ***Well, of course.***
> Q: And you knew that before this accident, didn't you?
> A: ***Of course, I knew that.***

Ex.B [Jackson Dep. at 20: 5-23].

In addition, Jackson was fully aware of the danger involved in cleaning debris with his hand, trying to beat the Splitter's three-second cycle:

> Q: Every time before this, were you trying to beat the cycle? In other words, when you put your hand in there you knew if you didn't get it out quickly, something could happen?
> A: ***Why sure.***

Ex. B [Jackson Dep. at 53: 7-11].

> Q: You knew that if you didn't beat the cycle, it would injure your hand badly; isn't that true?
> A: Well, ***it's just commonsense***, but yes.

Ex. B [Jackson Dep. at 43: 11-14].

Because the danger presented by the Splitter's side knives was open and obvious to Jackson, Besser owed no duty to warn Jackson under Alabama law. Thus, Besser is entitled to summary judgment on the plaintiff's negligent and wanton failure to warn claims. *Abney*, 919

8

So.2d at 296. In addition, because Besser was relieved of its duty to warn under negligence principles by Jackson's actual knowledge, Besser has a complete affirmative defense under the AEMLD. *Id.*; *see also Ex parte* Chevron Chem. Co., 720 So.2d 922, 929 (Ala. 1998). Thus, summary judgment is warranted.

### 2. *Jackson Would Not Have Heeded Any Warning About The Splitter.*

"A failure-to-adequately-warn case cannot be submitted to a jury unless there is some evidence that the allegedly inadequate warning would have been read and heeded and would have kept the accident from occurring." *Chase v. Kawasaki Motors Corp., USA*, 140 F.Supp.2d 1280, 1287 (M.D. Ala. 2001); *see Kelly v. M. Trigg Enterprises, Inc.*, 605 So.2d 1185, 1192 (Ala. 1992). There must be some evidence that the defendant's failure to warn proximately caused the plaintiff's injuries. *Id.*

If believed, Jackson's testimony indicates that his employer instructed him to clean debris out of the Splitter with his hand—without shutting off the Splitter—between its three-second cycles. Ex. B [Jackson Dep. at at 38: 7-19, 41: 2-10]. To be sure, Mr. Stephens and Mr. Mackey both testified that Jackson was instructed to clean debris out of the Splitter with his hand *only if the Splitter was first shut off.* Ex. D [Stephens Dep. at 65: 6-20]; Ex. C [Mackey Dep. at 53: 5-23, 54: 1-4, 76: 12-23, 77: 1-7]. They testified that if debris needed to be cleaned while the Splitter was operating, then Jackson was instructed to use a rod or stick. *Id.* However, for purposes of summary judgment, the Court need not reach the factual issue of how Jackson was trained or what he was instructed to do. Rather, Jackson's testimony shows that he would not have followed *any* warnings on the Splitter because, in spite of the obvious danger, he "had a job to do." Jackson testified:

> Q: I want to show you Defendant's Exhibit 1, and for the court and jury I want you to read something for me. I want you to read what it says right above the block splitter."

> A: Keep Hands Clear.
> Q: Do you understand that?
> A: Yes, I understand that.
> Q: Okay.
> A: But I also understand that my job was to make sure that debris was out of there between cycles.
> Q: I understand.
> A: I was doing my job.
> Q: But on this machine in letters you can read and understand on that machine, it said, Keep Hands Clear. While it's operating, is that what you understood?
> A: That's right.
> Q: While it's cycling?
> A: That's correct.
> Q: Is that what you understood?
> A: That's the way I understood it.
> Q: At any time this machine is actually on and running, it that what you understood?
>   Objection by Mr. Andrews.
> A: No, it ain't, because when the machine had finished cycling and them blocks are coming out, I got to clean that out.
> Q: I know, but that's because your employer--
> A: *That's part of what this is*, I mean.

Ex. B [Jackson Dep. at 32: 4-23, 33: 1-13]; Ex. B at Ex. 1 [Photo of Keep Hands Clear Warning].

Jackson states that despite his knowledge that the Splitter could cause serious injury to his hand, "[a]ll the same time I still had a job to do. No matter what you come up with, I had a job to do." Ex. B [Jackson Dep. at 49: 1-3]. In light of Jackson's testimony that he "had a job to do" and was doing it despite dangers he appreciated, Jackson would not have heeded any warning about the Splitter. In fact, Jackson blatantly ignored the Splitter's warnings and his own better judgment and proceeded to do what he knew to be dangerous. In addition, Jackson also ignored Mr. Mackey's verbal (and visual) warning[3], which was possibly the single most persuasive warning anyone could have received about the Splitter:

---

[3] In 2001, Mr. Mackey had an accident on the Splitter and lost the same three fingers that Jackson did. Mr. Mackey's accident was admittedly due to his own inadvertence and is not substantially similar to Jackson's accident.
(continue)

10

>Q: Prior to this accident, Karry Mackey says, and even shows you his missing fingers; isn't that true.
>A: That's true.
>Q: Prior to this accident, he showed you his missing fingers; isn't that true?
>A: When I first came into that building he showed me.
>Q: He showed you his [hand] and said, this block splitter...will cut your fingers off? He told you that didn't he?
>A: He said it *could*.

Ex. B [Jackson Dep. at 48: 1-12].

Under these circumstances, it is clear that Jackson would have heeded no warning about the Splitter. Because Jackson cannot establish that the lack of an adequate warning proximately caused his injuries, his failure to warn claims fail as a matter of law. Thus, summary judgment is proper.

**B.   Jackson's AEMLD Claim For Defective Product And His Claim For Negligent Design/Distribution Both Fail As A Matter Of Law.**

*1.   Jackson's Claims Are Barred By The Affirmative Defense Of Assumption Of The Risk Because The Undisputed Facts Show That Jackson Knew And Appreciated The Danger Presented By The Splitter's Side Knives.[4]*

"In order to establish assumption of the risk as a matter of law, the evidence must show that the plaintiff discovered the alleged defect, was aware of the danger, proceeded to unreasonably use the product, and was injured." *Sears v. Waste Processing Equip., Inc.*, 695 So.2d 51, 53 (Ala. Civ. App. 1997). The plaintiff's state of mind is determined by a subjective standard, focusing on the risk as known and appreciated by the plaintiff before the accident the occurred. *Ammons v. Tesker Mfg. Corp.*, 853 So.2d 210, 217 (Ala. 2002); *see id.*

Here, Jackson knew that the Splitter's side knives were unguarded, open and exposed. He testified that he had cleaned debris from the side knives "numerous times" before his

---

(continued)
Mr. Mackey was engaged in a conversation with a worker, was not looking at the Splitter and accidentally reached in too far. Ex. C [Mackey Dep. at 19: 3-19, 77: 17-23, 78: 1-9, 83: 8-23].
[4] Besser incorporates by reference its open and obvious and contributory negligence arguments and evidence into this section.

11

accident. Ex. B [Jackson Dep. at 17: 1-17, 50: 12-22]. Further, when asked at deposition if he believed the Splitter was defective, Jackson testified, "I felt like there should have been some kind of way for you to be able to get up in there and that machine not keep operating, *yeah, the whole time I was working on that machine*." Ex. B [Jackson Dep. at 54: 17-22 (emphasis added)]. Thus, Jackson was aware of the alleged defect before his accident.

Next, Jackson testified that he was well aware of the danger presented by placing his hands near the Splitter's side knives:

> Q: But you had seen that block being split before, correct?
> A: After I started working there, yes, sir.
> Q: And had you seen the side knives split the block before your accident?
> A: Yes.
> Q: So you saw that the side knives were sharp, correct?
> A: I wouldn't say they were sharp...they are a blunt-type blade.
> Q: If you put your hand in there and [the] side knives closed, would it injure your hand?
> A: ***Well, of course***.
> Q: And you knew that before this accident, didn't you?
> A: ***Of course, I knew that***.

Ex. B [Jackson Dep. at 20: 5-23].

In addition, Jackson was fully aware of the danger involved in cleaning debris with his hand, trying to beat the Splitter's three second cycle:

> Q: Every time before this, were you trying to beat the cycle? In other words, when you put your hand in there you knew if you didn't get it out quickly, something could happen?
> A: ***Why sure***.

Ex. B [Jackson Dep. at 53: 7-11].

> Q: You knew that if you didn't beat the cycle, it would injure your hand badly; isn't that true?
> A: Well, ***it's just commonsense***, but yes.

Ex. B [Jackson Dep. at 43: 11-14].

Moreover, when Jackson began work and before his accident occurred, Mr. Mackey showed Jackson his right hand and his missing fingers. Ex. B [Jackson Dep. at 48: 1-12]. Mr. Mackey warned Jackson that the Splitter could cut off his fingers. *Id.*

Despite Jackson's awareness of the alleged defect, his appreciation of the danger and Mr. Mackey's warning, he nevertheless proceeded to unreasonably use the Splitter. It is more than unreasonable no matter the circumstances for anybody to put their hand in a splitting machine when they know it will be severely injured if not removed within three seconds. Even Jackson admitted that it was "common sense" if he did not beat the Splitter's cycle, his hand would be injured severely. Ex. B [Jackson Dep. at 43: 10-14]. Mr. Stephens and Mr. Mackey both testified to similar effect that cleaning debris from the Splitter's side knives with one's hand—without shutting off the Splitter—is unreasonable and unsafe. Ex. D [Stephens Dep. at 65: 6-23, 66: 1-12]; Ex. C [Mackey Dep. at 65: 7-11, 66: 1-3]. Further, Jackson admitted that he knew how to stop the Splitter and that nothing prevented him from doing so on the day of his accident. Ex. B [Jackson Dep. at 24: 2-20. Finally, immediately after the accident, Jackson admitted to Mr. Stephens and Mr. Mackey that he knew better than to stick his hand in the Splitter and that the accident was his fault. Ex. D [Stephens Dep. at 67: 1-12]; Ex. C [Mackey Dep. at 51: 15-23].

For these reasons, as a matter of law, assumption of the risk bars Jackson's claims for defective product under the AEMLD and negligent design/distribution. Accordingly, summary judgment is proper.

> 2. *Jackson's Claims Are Barred By The Affirmative Defense Of Contributory Negligence Because The Undisputed Facts Show That Jackson Consciously Appreciated The Danger Presented By The Splitter's Side Knives At The Moment The Accident Occurred.*[5]

---

[5] Besser incorporates by reference its open and obvious and assumption of the risk arguments and evidence into this section.

"To establish contributory negligence as a matter of law, a defendant seeking summary judgment must show that the plaintiff put himself in danger's way and that the plaintiff had a conscious appreciation of the danger at the moment the incident occurred." *Sears*, 695 So.2d at 53; *see Rowden v. Tomlinson*, 538 So.2d 15, 18 (Ala. 1988); *Wallace v. Doege*, 484 So.2d 404, 406 (Ala. 1986); *Charpie v. Lowes Home Centers, Inc.*, 930 F.Supp. 1498, 1502 (M.D. Ala. 1996). Assumption of the risk and contributory negligence are similar concepts, but contributory negligence requires the plaintiff to consciously appreciate the danger at the moment of the accident. *See id.*

Based on the evidence submitted in support of the assumption of risk and open and obvious arguments, it could be inferred that Jackson put himself in danger's way and consciously appreciated the danger of the side knives at the moment his accident occurred. Nevertheless, it is an undisputed fact that Jackson tried to pull his hand out of his glove just as the accident was occurring. Ex. B [Jackson Dep. at 52: 3-8]. This shows that Jackson consciously appreciated the danger of the Splitter's side knives at the very moment the accident occurred. As Jackson put it, "when I was starting to come out [of the Splitter's side knives area] and my glove got hung up and the machine started pushing my hand. *I tried to snatch my hand out of my glove* and I couldn't get it out. So that's how it happened." *Id.* Jackson tried to pull his hand free from his glove because he consciously appreciated the danger of the side knives injuring his hand *at the very moment* his accident occurred. Under these circumstances summary judgment is appropriate and consistent with long-standing Alabama precedent.

As support, Besser directs the Court to *Rowden* wherein the Alabama Supreme Court held that the plaintiff, a seventeen-year-old farm hand, was contributorily negligent, as a matter of law, when he knowingly placed his hands near the auger mechanism of a combine (while it

was running) to clear grass that had become clogged at the bottom of the machine. *Rowden*, 538 So.2d 15, 17-18 (Ala. 1988). Mr. Rowden, like Jackson, knew at the time of his accident that blades were operating automatically in plain and open view, and he also knew the dangers involved in placing his hands near the moving blades. *Id.* at 17. In *Rowden*, summary judgment on the defense of contributory negligence was affirmed principally upon Rowden's deposition testimony, which is very similar to Jackson's. Mr. Rowden testified:

> Q: You knew it was dangerous to put your hand around a moving auger, didn't you?
> A: Yes, sir.
> Q: You don't say that Mr. Tomlinson ought to have told you that. You had enough judgment to know it was dangerous, didn't you?
> A: Yes, sir.
> Q: So at the time you realized that there was a risk involved if you should get your hand some way into contact with or touch or get it tangled up with the auger, didn't you?
> A: I never thought about it. I just reached in and got the seed—I mean grass.
> Q: You knew it was an opened, exposed auger, didn't you?
> A: Yes, sir.

*Id.* at 18.

In this case, as in *Rowden*, Jackson knew at the moment of his accident that the Splitter's side knives were unguarded, open and exposed. In addition, Jackson's deposition testimony, like Rowden's, makes clear that he was sufficiently familiar with the machine to realize the danger involved in placing his hand in the vicinity of the side knives. *Id.;* Ex. B [Jackson Dep. at 20: 5-23].

Similarly, in *Doege*, the plaintiff was attempting to clean debris from a saw when her glove became caught and the saw caused severe injuries to her hand. *Doege*, 484 So.2d at 405. Like Jackson, she also testified that she did not shut off the machine before attempting to clean the debris. *Id.* She admitted that she knew it was dangerous to clean the saw without shutting it off. *Id.* Here, Jackson was well aware of the dangers presented by the side knives. Ex. B [Jackson Dep. at 20: 5-23, 43: 11-14]. Instead of shutting off the Splitter before he attempted to

clean the debris—which undisputedly would have eliminated the danger presented by the side knives—he instead placed his hand into an area where he knew he had only three seconds to remove it before certain, severe injury occurred. *Id.*; *see* Ex. D [Stephens Dep. at 65: 6-23, 66: 1-12]; Ex. C [Mackey Dep. at 65: 7-11, 66: 1-3]. Jackson, like Doege, consciously appreciated the danger at the moment the accident occurred.

It is undisputed that Jackson knew the Splitter's side knives were dangerous. It is also undisputed that Jackson consciously appreciated the danger at the moment the accident occurred. Jackson's attempt to free his hand from his glove just as the side knives closed on his hand is stronger evidence of conscious appreciation of danger than in either *Doege* or *Rowden*. For these reasons, as a matter of law, contributory negligence bars Jackson's AEMLD claim for defective product and his claim for negligent design/distribution. Accordingly, summary judgment is proper.

## V.  CONCLUSION

For the reasons set forth above and in Besser's Motion for Summary Judgment, the Court should grant summary judgment in favor of Besser and against Jackson on each of Jackson's claims in Count I, Count II, Count III and Count IV against Besser.

Respectfully submitted this 31 day of July 2007.

/s/ *[signature]*

Thomas T. Gallion, III (ASB-5295-L74T)
Constance C. Walker (ASB-5510-L66C)
Laurin D. Quiat (Colo. Bar No. 14687)
Wade D. Mitchell (Ohio Bar No. 0030647)
Cory M. Curtis (Colo. Bar No. 34907)
*Attorneys for Defendant Besser Company*

**OF COUNSEL:**

**HASKELL SLAUGHTER YOUNG & GALLION, LLC**
305 South Lawrence Street
Montgomery, Alabama 36104
(334) 265-8573
(334) 264-7945

**BAKER & HOSTETLER LLP**
303 East 17th Avenue, Suite 1100
Denver, Colorado 80203
(303) 861-0600
(303) 861-7805

3200 National City Center
1900 East 9th Street
Cleveland, Ohio 44114-3485
(216) 861-7971
(216) 696-0740

4

## **CERTIFICATE OF SERVICE**

I hereby certify that I served a copy of the foregoing *Defendant Besser Company's Brief in Support of its Motion for Summary Judgment* upon the following counsel of record by placing a copy of the same in the United States mail postage prepaid, this the __31__ day of July, 2007:

S. Mark Andrews
Morris Cary Andrews Talmadge & Jones, LLC
3334 Ross Clark Circle
P.O. Box 1649
Dothan, AL 36302

Steadman S. Shealy, Jr.
Shealy, Crum & Pike, P.C.
2346 West Main Street, Suite 1
P.O. Box 6346
Dothan, AL 36302

_____
Of Counsel

18