

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| DAVID JACKSON, | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| VS. | ) | **CIVIL ACTION NO.:** |
| | ) | **2:06 CV0412-DRB** |
| BESSER COMPANY, | ) | |
| et al., | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |

<u>**NOTICE OF TAKING 30(b)(5) & (6) DEPOSITION**</u>

PLEASE TAKE NOTICE that the Plaintiff will take the deposition of Defendant, BESSER COMPANY, upon oral examination as provided by Rule 30(b)(5) & (6) of the ALABAMA RULES OF CIVIL PROCEDURE. The deposition will be taken on <u>March 21, 2007</u> beginning at <u>9:00 a.m., at</u> <u>3200 National City Center, 1900 East 9th Street, Cleveland, Ohio 44114-3485,</u> and shall continue from day to day until complete. The oral examination will encompass those matters discoverable under Rule 26 of the ALABAMA RULES OF CIVIL PROCEDURE.

In connection with the examination, Plaintiff requests the production at the taking of the deposition of material and documents subject to production under Rule 30(b)(5) & (6) and Rule 34, ALA. R. CIV. P. The material and documents are identified hereafter.

**NOTICE UNDER RULE 30(b)(5)(6) AL. R. CIV. P.**

This notice is directed to the deponent, CORPORATE REPESENTATIVE OF DEFENDANT BESSER COMPANY. The Alabama Rules of Civil Procedure requires that a private corporation designate <u>ONE OR MORE</u> officers, directors, or managing agents or other person who consent to testify on its behalf, to testify about the matters on which examination is requested. The corporation may set forth each person designated and the matter on which he will testify.

1

## DEFINITIONS

For the purposes of this discovery notice the following terms shall have the following respective meanings and usages:

1.     "*Deponent*" shall refer to BESSER COMPANY, its officers, employees, or any other agents or representatives of the said corporation.

2.     *Defendant*" shall refer to BESSER COMPANY, its officers, employees, or any other agents or representatives of the said corporation.

3.     "*Document*" shall mean every original and every non-identical copy (including blind copies) of each and every paper, writing, picture, photograph, slide, movie, film, visual, or audio transcription, video tape, sound recording, micro-film, data stored or recorded on or in punch cards, computer tapes, disc, reels or any other storage devices for business subject block splitters or other means of storing and/or transmitting human intelligence, and any other printed or readable material.  To be included without limitation in this definition of "document" are every invoice, statement, bill, ledger sheet, recommendation, endorsement, order, discretion, letter, telegram, Teletype, report memorandum, (including without limitation every inter-office memorandum, file memorandum, work memorandum and memorandum of telephone conversation), interview, sketch, graph, chart, note (including without limitation notes used to prepare any letter, memorandum, reports or other documents as herein defined), contract, agreement, form, worksheet, timesheet, expense ledger, check (canceled or otherwise), check stub, voucher receipts, witness statements (including those of potential witnesses), transcript, interview, sound recording transcription, computer printout, book of accounts, payroll record, minute diaries (both office and personal), log file card, raw data, notes and/or travel report, data evidence, statement of expenses incurred, report of investigation, report of interview, record, brochure, book, exhibit, draft, certificate, table, price list and any other tangible item or thing or readable or visual material or whatsoever nature and every file folder in which the above items are stored, filed, or maintained.

4.     The term "*hazard*" as used hereinafter in this notice shall be deemed to refer to any condition or any changing set of circumstances, which presents an injury potential.

### SCOPE OF THE EXAMINATION AND IDENTIFICATION OF
### MATERIALS AND DOCUMENTS TO BE PRODUCED

The matters on which the examination will be conducted and the documents reviewed are:

1.     Testimony and *documents* that are in any way related to the subject matter of each and every interrogatory, request for admission, or request for production of *documents* filed by the Plaintiff on this *Defendant*.  The area of inquiry contained in each such interrogatory, request for admission and request for production are incorporated by reference herein.

2

2.     Testimony and *documents* related in any way to an explanation of any *documents* produced by this *Defendant* to this action.  This inquiry would include but not necessarily be limited to an examination concerning:

     a.  The date of the *documents;*
     b.  The author of the *documents;*
     c.  The description of the *documents;*
     d.  The recipient of the *documents;*
     e.  The purpose or objective of the *documents;*
     f.  The relationship of the *documents* to any objectives or purposes of the entity of the *Defendant;*
     g.  Explanation of any terms used in the *documents;*
     h.  The approving authority of the *documents;*

3.     Testimony and *documents* evidencing or relating to the authentication of any *document* produced by this *Defendant* in response to any discovery requests.

4.     General personal background information.

5.     General information on the industry including knowledge of competitor's products.

6.     Testimony and *documents* evidencing or relating to the design, engineering, construction, fabrication and assembly of the *subject block splitter* manufactured by BESSER COMPANY

7.     Testimony and documents relating to any retrofit, upgrade or rebuild program instituted or offered by this Defendant.

8.     Testimony and *documents* concerning the identification of the individual engineers and employees who were directly responsible for performing the design and engineering work on the *subject block splitter* and/or other *Besser Company block splitters.*

9.     Testimony and *documents* relating to the names, titles and last known addresses of the persons who have custody of any records relating to the design, engineering, construction, fabricating, assembly, inspection and delivery of the *subject block splitter* and/or other *Besser Company block splitters.*

10.     Testimony and *documents* concerning inspections of the subject block splitter by any individual engineers or employees of the *Defendant* whether before or after the Plaintiff's accident and whether for quality control or otherwise.

11.     Testimony and documents concerning safety considerations relative to the design of the subject block splitter.

12.    Testimony and documents evidencing or relative to meetings of this Defendant's product safety committee.

13.    Testimony and *documents* concerning development and testing of this Defendant's subject block splitter, including any failure modes and effects analyses, hazard risk analyses, fault tree analyses or other human factor analyses relative to the maintenance, development and/or design of the subject block splitter.

14.    Testimony and *documents* concerning safety features and/or safety interlocks designed into or available for the subject block splitter.

15.    Testimony and *documents* concerning emergency operation characteristics of the subject block splitter.

16.    Testimony and *documents* concerning any licensing obtained by the *Defendant* and the identification of each state in which the *Defendant* does business.

17.    Testimony and *documents* evidencing or relating to the original design of the subject block splitter and any changes made in the design and engineering on the *subject block splitter*.

18.    Testimony and *documents* relating to any memoranda or other writing that would evidence any discussions between the *Defendant* and any co-defendant or third party relative to any matters concerning safety as it relates to the subject block splitter once it was completed and delivered.

19.    Testimony and *documents* relative to the identification of individual engineers and employees of the *Defendant* who communicated with any co-defendants (their agents and employees) and third parties concerning the subject block splitter and the facts of Plaintiff's accident.

20.    Testimony and *documents* relative to the identification of individual engineers and employees of the *Defendant* who would be considered the contact person(s) with personnel from co-defendants relative to the *subject block splitter*.

21.    Testimony and *documents* relative to the identification of individual engineers and employees of the *Defendant* who are custodian of records related to the subject block splitter and/or other *Besser Company block splitters,* whether related to testing, design, marketing, sale, distribution or otherwise.

22.    Testimony and *documents* relative to the identification of any material suppliers, fabricators, or assemblers for the subject block splitter.

23.    Testimony and *documents* evidencing or relating to the business relationship, contracts and written agreements and all business transactions between the *Defendant* and any material supplier, fabricator or assembler of any component part of the subject block splitter.

24.     Testimony and *documents* evidencing or reflecting the path of distribution of the subject block splitter.

25.     Testimony and *documents* evidencing or relating to the history of the *Defendant* which would include date founded, who founded, number of locations, number of engineers, states in which the *Defendant* is authorized to do business and has conducted business.

26.     Testimony and *documents* relating to an organizational chart of the *Defendant* company and the general corporate structure of this Defendant, including, but not limited to, the engineering department responsible for the design and manufacture of the subject block splitter.

27.     Testimony and *documents* relating to any patents held by the *Defendant* including the names, titles and addresses in the *Defendant's* employ responsible for the applications and the persons who have custody of any records relating to the applications for any patent applicable to the *subject block splitter,* or other *Besser Company block splitters.*

28.     Testimony and *documents* evidencing or relating to the substance and content of all claims or representations made by the *Defendant* either orally or in writing as to the quality or fitness of the completed *subject block splitter.*

29.     Testimony and *documents* evidencing or relating to warranties or representations that the subject block splitter was in compliance with federal, state or local regulations or industry standards regulating the design, engineering, construction, fabrication and assembly of the such facilities including an inquiry into the following:

      a.     Names of such regulations or standards;

      b.     How and in what manner such regulations or standards regulate or define the services to be performed.

30.     Testimony and *documents* evidencing or relating to any and all warnings or instructional materials relative to the *subject block splitter* and/or other *Besser Company block splitters.*

31.     Testimony and *documents* evidencing or relating to all literature, brochures, pamphlets or other printed material which the *Defendant* customarily uses in promoting and marketing the subject block splitter and its company.

32.     Testimony and *documents* evidencing or relating to each newsletter, report or other material that the *Defendant* customarily issues to its existing customer/client base and any potential customers/clients for its services.

33.     Testimony and *documents* evidencing or relating to any and all federal, state or local governmental standards and regulations to which the design, engineering, construction, fabrication

and assembly of the *subject block splitter and/or* other *Besser Company block splitters* must comply.

34.     Testimony and *documents* evidencing or relating to any and all communications with state and federal agencies with respect to compliance with government standards and regulations concerning the design, engineering, construction, fabrication and assembly of the *subject block splitter and/or* other *Besser Company block splitters.*

35.     Testimony and *documents* evidencing or relating to suggested, recommended, voluntary or mandatory standards, rules, regulations and/or laws pertinent to the design, engineering, construction, fabrication, assembly and inspection of the *subject block splitter and/or* other *Besser Company block splitters.*

36.     Testimony and *documents* evidencing or relating to the *Defendant's* participation in any committees, organizations, bodies or otherwise that have ever promulgated any regulations, standards or otherwise dealing the design, engineering, construction, fabrication, assembly and/or inspection of the subject block splitter and/or other *Besser Company block splitters.*

37.     Testimony and *documents* evidencing or relating to the *Defendant's* or its employees membership in any procedure standards committee, industrial professional societies and/or safety organizations.

38.     Testimony and *documents* regarding the *Defendant's* or its employees communications, correspondence and/or *documents* exchange with any federal, state or local agency or governmental entity or officer thereof relative to the *subject block splitter.*

39.     Testimony and *documents* related to any and all governmental statutes, regulations or standards, industry standards, corporate standards, authoritative articles or treatises, which the *Defendant* contends or admits are applicable to the design, engineering, construction, fabrication, assembly or inspection of the *subject block splitter and/or Besser Company block splitters.*

40.     Testimony and *documents* evidencing or relating to the *Defendant's* recommendations as to *subject block splitter* whether related to warnings, safety or otherwise.

41.     Testimony and *documents* evidencing or relating to uses of, or human contact with, the *subject block splitter and/or Besser Company block splitters* that are specifically forbidden, warned against, or discouraged by the *Defendant.*

42.     Testimony and *documents* reflecting the conditions and circumstances of the environment of use of the subject block splitter, and any determination of any and all hazards associated with the use or human interface and contact of the *subject block splitter* and other *Besser Company block splitters.*

43.     Testimony and *documents* evidencing or relating to each and every book, treatise, article, journal, periodical, monograph, or other work which has discussed, analyzed or in any way

dealt with the design, engineering, construction, fabrication, assembly and inspection of the *subject block splitter and/or Besser Company block splitters* that the *Defendant* has worked on at any time.

44.     Testimony and *documents* evidencing or relating to the *Defendant's* knowledge or its reason to believe or suspect that individuals and have sustained injuries in circumstances similar to those facts as alleged in Plaintiff's Complaint.

45.     Testimony and *documents* reflecting user complaints or reports of injury with respect to the subject block splitter or other Besser Company block splitter or actual examinations indicating the existence or alleged existence of hazards like or similar to the hazard that Plaintiff claims matured into an accident in this case.

46.     Testimony and *documents* evidencing or relating to any and all lawsuits that have been filed against this *Defendant* within the last ten years where an allegation of negligence, product defect, and/or failure to warn has been alleged which resulted in the death or injury of an individual in that particular litigation(s).

47.     Testimony and *documents* evidencing or relating to the *Defendant's* knowledge concerning the facts and circumstances surrounding the accident or incident made the basis of this action.

48.     Testimony and *documents* evidencing or relating to the substance of all communications, statements or conversations between the *Defendant* or any agent or employee of the *Defendant* and plaintiff and/or his employer related to the alleged occurrence made the basis of this lawsuit.

49.     Testimony and *documents* evidencing or relating to all inspections or examinations of the facts and circumstances surrounding the Plaintiff's claim that have been made or caused to be made by the *Defendant*.

50.     Testimony and *documents* evidencing or relating to any admissions that the *Defendant* claims that Plaintiff may have made as well as any eyewitnesses to the *incident* made the basis of this action.

51.     Testimony and *documents* evidencing or relating to the identification of each and every person, firm, partnership, association or corporation contacted or consulted about this litigation, the issues therein, the facts or law in connection with the Plaintiff's claim or the facts or law in connection with the *Defendant's* defense. This inquiry would specifically exclude privileged attorney/client communications.

52.     Testimony and *documents* reflecting the conduct and results of any investigation, inspection, or examination, either of the *subject block splitter* or of said incident, conducted by or on behalf of the *Defendant*.

53.     Testimony and *documents* reflecting the conduct and the results of any investigation,

inspection, or examination, either of the *subject block splitter,* or of said incident, conducted on behalf of the *Defendant* after the date of the incident.

54.    Testimony and *documents* reflecting or relating to the conduct and results of any and all tests, studies, calculations, examinations, inspections, etc., conducted in conjunction with the preparation of the above styled cause, either for the purpose of providing the basis of expert testimony or for the purpose of providing information to serve as the basis of cross examination of the Plaintiffs' experts.

55.    Testimony and *documents* evidencing or relating to any contention of the *Defendant* that the alleged occurrence was caused in whole or in part by some person or persons other than the *Defendant.*

56.    Testimony and *documents* evidencing or relating to any contention held by the *Defendant* that the alleged occurrence was caused or contributed to by some act or omission by the plaintiff or that the plaintiff assumed the risk associated with use of the *subject block splitter.*

57.    Testimony and *documents* evidencing or relating to any alterations or changes in the condition of the *subject block splitter* which the *Defendant* contends is relevant to the liability issues in this litigation.

58.    Testimony and *documents* evidencing or relating to any and all warranties given by *Defendant* with regards to the *subject block splitter* and/or and where and how such warranties were communicated and/or located.

59.    Testimony and *documents* concerning or related to any publications authored or co-authored by this *Defendant*, its agents, employees, officers and/or directors.

60.    Testimony and *documents* concerning or related to any publications or periodicals or magazines to which this *Defendant* has subscribed in the last ten years.

61.    Testimony and *documents* evidencing or relating to information regarding safety in the design, manufacture, assembly, use and/or maintenance of the *subject block splitter* and in particular, guarding of subject block splitter.

62.    Testimony and *documents* evidencing or relating to any past reports, claims or lawsuits involving this *Defendant* with regards to injuries and/or damages associated with use of subject block splitter.

63.    Testimony and documents evidencing or relating to other incidents, claims, complaints and/or lawsuits relating to incidents wherein operators of this Defendant's block splitters were injured or killed while operating the block splitter.

64.    Testimony and documents evidencing or relating to other incidents, claims, complaints and/or lawsuits wherein it was alleged that Besser Company block splitters designed,

engineered, manufactured or distributed by this Defendant should be equipped with safety interlock technology.

65.   Testimony and documents evidencing or relating to other incidents, claims, complaints and/or lawsuits wherein it was alleged that block splitters manufactured by this Defendant is dangerous or defective.

66.   Testimony and documents evidencing or relating to any documentation regarding the need for safety interlock operator sensing switches or technology for this Defendant's block splitters.

67.   Testimony and documents evidencing or relating to any committees, including committee minutes, notes, memos or other writings relating to or pertaining to the potential for this Defendant's block splitters s to cause injury to users thereof.

68.   Testimony and documents evidencing or relating to any studies, considerations or concerns regarding the potential for this Defendant's block splitters to cause injury to users thereof.

69.   Testimony and documents evidencing or relating to the sale, shipment and/or distribution of this Defendant's block splitters in countries outside of the United States.

70.   Testimony and documents relating to any communication to or from any government, safety or other regulatory agency regarding injuries caused by this Defendant's subject block splitters.

71.   Testimony and documents relating to any standards relating to safety standards or requirements which apply to this Defendant's block splitters.

72.   Testimony and documents relating to deposition testimony given in any previous lawsuits regarding allegations of product liability.

73.   Testimony and documents relating to all documentation, letters, memorandum, engineering drawings, or any other documentation in any manner related to the name of the engineer with MIT who provided an alternative design for the block splitter as testified to by Ronald Neese, as well as a copy of all documentation, including any and all drawings, sketches, descriptions, memoranda or any other documentation related to any proposed alternative design for the block splitter as testified to by Ronald Neese.

74.   Testimony and documents relating to the name and last known address of the engineer at MIT as testified to by Ronald Neese who provided drawings and an alternative design for the E&R block splitter machine as testified to by Ronald Neese during lawsuit filed by Raymond Domenici.

75.   Testimony and documents relating to all sales documentation of any block

splitter machine sold in the State of Alabama from 1995 to the present.

76.    Testimony and documents relating to all correspondence in Besser's possession between Besser Company and E&R regarding the following:

    a.    any alternative designs or guarding options for the E&R block splitter;

    b.    any hazard analysis discussions as to the E&R block splitter;

    c.    appropriate or alternative warnings for the E&R block splitter;

    d.    any discussions as to any accident involving any operator of any E&R block splitter machine distributed by Besser.

    e.    any directives, memos, letters, correspondence or otherwise as to any directive action, instructional guidance or other communication between Besser and E&R as to any action suggested by Besser to E&R for guarding of the subject block splitter machine model CM-24;

    f.    a copy of any and all promotional video marketing films and/or any other promotional video in E&R's possession related to the operation of a block splitter machine.

    g.    the alternative design for the block splitter as testified to by Ronald Neese as recommended by the MIT engineer, as well as a copy of all documentation, including any and all drawings, sketches, descriptions, memoranda or any other documentation related to any proposed alternative design for the block splitter as testified to by Ronald Neese.

## DUCES TECUM

    In addition to the foregoing documents identified for production, the deponent is directed to bring the following documents to the deposition:

    1.    Any and all safety standards or requirements in your possession which this defendant contends apply to this Defendant's block splitters and/or the subject block splitter.

    2.    Copies of all deposition testimony in your possession given in any previous lawsuits regarding allegations of product liability.

    3.    All documentation, letters, memorandum, engineering drawings, or any other documentation in any manner related to the name of the engineer with MIT who provided an alternative design for the block splitter as testified to by Ronald Neese, as well as a copy of all documentation, including any and all drawings, sketches, descriptions, memoranda or any other documentation related to any proposed alternative design for the block splitter as testified to by Ronald Neese.

    4.    Any and all documentation relating to the name and last known address of the engineer at MIT as testified to by Ronald Neese who provided drawings and an alternative design for the E&R block splitter machine as testified to by Ronald Neese during lawsuit filed by Raymond Domenici.

5.    Any and all documentation relating to all sales of any block splitter machine sold in the State of Alabama from 1995 to the present.

6.    Any and all documentation relating to all correspondence in Besser's possession between Besser Company and E&R regarding the following:

      a.    any alternative designs or guarding options for the E&R block splitter;

      b.    any hazard analysis discussions as to the E&R block splitter;

      c.    appropriate or alternative warnings for the E&R block splitter;

      d.    any discussions as to any accident involving any operator of any E&R block splitter machine distributed by Besser.

      e.    any directives, memos, letters, correspondence or otherwise as to any directive action, instructional guidance or other communication between Besser and E&R as to any action suggested by Besser to E&R for guarding of the subject block splitter machine model CM-24;

      f.    a copy of any and all promotional video marketing films and/or any other promotional video in E&R's possession related to the operation of a block splitter machine.

      g.    the alternative design for the block splitter as testified to by Ronald Neese as recommended by the MIT engineer, as well as a copy of all documentation, including any and all drawings, sketches, descriptions, memoranda or any other documentation related to any proposed alternative design for the block splitter as testified to by Ronald Neese.

Respectfully submitted this ___13___ day of March, 2007.

                    **MORRIS, CARY, ANDREWS,**
                    **TALMADGE, JONES & DRIGGERS, LLC**

                    _____

                    S. Mark Andrews (AND063)
                    Attorney for Plaintiff
                    P.O. Box 1649
                    Dothan, Alabama 36302
                    (334) 792-1420

## CERTIFICATE OF SERVICE

I hereby certify that I on this, the  13  day of March 2007, mailed a copy of the foregoing document, properly addressed and postage prepaid to the following:

Steadman Shealy
Shealy, Crum & Pike
P.O. Box 6346
Dothan, AL 36302

T. Kelly May
Christopher S. Rodgers
Huie, Fernambucq & Stewart, LLP
Three Protective Center
Suite 200
2801 Highway 280 South
Birmingham, AL 35223-2484

Constance C. Walker
Thomas T. Gallion, III
Haskell, Slaughter, Young & Gallion, LLC
P.O. Box 4660
Montgomery, AL 36103-4660

Cory M. Curtis
Baker & Hostetler, LLP
303 East 17th Avenue
Suite 1100
Denver, CO 80203

_____
S. Mark Andrews     (AND063)

| File: | Case Number: | Equipment: | | Type: | | Serial Model Number: |
|---|---|---|---|---|---|---|
| PLN | 102 | Splitter | | | | |
| **Claimant Name:** | | **Plant:** | | **State:** | **Date of Loss:** | |
| Griep, Glenn | | unk. | | WI | 8/20/1993 | |
| **Aware:** | | **Equipment Date:** | | | one cas... num: | |
| | | unk. | | | unk. | |
| | | | Equipment P/N: | | Equipment Serial: | |
| | | | unk. | | unk. | |
| **Body Part:** | | | | | | |
| unk. | | | | | | |

Only info in file is a letter from Griep's attorney.

Unknown what plant this happened at.



BES 0025

| File & Number | Equipment | | Scraft Work Area |
|---|---|---|---|
| PLN 107 | Splitter | 6386 | 161 |

| Party Name |
|---|
| Murrock, Wayne |

| Plant | | | Date of position |
|---|---|---|---|
| Barnes & Cone, Inc. | NY | 3/7/1997 | |

| Equipment Date | Equipment | Operation |
|---|---|---|
| 3/22/1995 | Inv. #IN123400 date | operation |

**Body Injury:**
L hand - 1 finger amput. / 3 other fingers crushed

Murrock reached into splitter to pull a block out while machine was in automatic - splitter blade engaged crushing his fingers betwn. the block.

BES 0022

| File Case Number | Equipment | | Type | | Serial Model Number |
|---|---|---|---|---|---|
| PLS | 025 | Block Splitter | | | CM24-248 |

| Manufacturer | | Plant | | State | Date Closed | Disp |
|---|---|---|---|---|---|
| Domenici, Raymond | | Foster Masonry Prod. | | MA | 11/25/1985 | settle |

| | Equipment Date | Equipment Prod | Operation Performed |
|---|---|---|---|
| | 3/24/1975 | install date | clear jam |

| Award | | | |
|---|---|---|---|
| 20000 | | | |

**Body Injury**

R hand-2 fing amput & crush inj.

**Description**

Domenici was attempting to clear a jam in splitter w/out turning off machine - he reached through splitting area, pulled block forward which actuated splitter while his hands were still on block - splitting wedges caught his hands against block - machine was in automatic mode.

MASSACHUSETTS, MIDDLESEX

Civil CASE 86-3045

BES 0017

| PLN | 068 | Block Splitter | | CM24HF-5979 | |
|---|---|---|---|---|---|
| Woodward, Peter | | James Blk. & Brick | TN | 12/10/1987 | n/a |
| | | 12/12/1987 | install date | adjustment | |

L hand - palm lacerated

Splitter was not in line - Woodward was making adjustments to splitter. Pusher cylinder & carriage were in forward position - Woodward accidently hit limit switch causing pusher cylinder to retract bringing carriage tripper bar to home position - his hand was caught betwn. bar & end of splitter frame - as he jerked his hand away, his palm was cut.

BES 0018



| File Case Number | Equipment | | Serial Number | CM24HF-5969 |
| --- | --- | --- | --- | --- |
| PLN 071 | Block Splitter | | | |
| | | | | Illness Duration |
| Injured Name | Brand | State | Incident Date | n/a |
| Arnold, Lavern | Southland Supply Co. | TN | 5/10/1988 | Operation/Action |
| | Equipment Date | | | clearing jam |
| | 7/30/1987 | install date | | |
| Body Injured | | | | |
| both hands - see DESCRIPTION | | | | |

**Description**

Injuries: L hand - fractured fingers
R hand - middle finger tip cut off

Arnold was trying to unjam splitter while machine was still turned on.

BES 0019

| PLN | 072 | Block Splitter | | | CM24 |
|---|---|---|---|---|---|

Miller, David

Chas. M. Friedheim

MN    6/13/1988 | n/a

unk.

see DESCRIPTION

foot - large toe lacerated

Miller was a truck driver for Chas. M. Freidheim -- what he was doing by splitter is unknown. Switch apparently waws hit under Splitter had been modified so splitting bar could be actuated by foot. Miller's foot was caught in drive gears under splitter. machine & in process of getting the switch out,

BES 0020



| Plant Number: Equipment | | Serial/Model Number |
|---|---|---|
| PLN 109 | Slpitter | 6386 | 165 | |
| Injured Name: | Plant | Site | Location |
| Salmon, Robert | Tarmac/Richmond | VA | |
| Age: | Equipment Date: | Equipment Date: | Incident Date: | Operation Performed |
| | | | 5/30/1997 | Cleaning |
| Body Injury: | |
| crushed hand | |

Splitter was jammed, Mr Salmon reached inside the plitter to remove a chuck of concrete when the pusher bar moved pinching his hand.

BES 0021



| PLN | 132 | Block Splitter | 6386 | 296 |
|---|---|---|---|---|
| Sowers, Steve | | Supreme/Winchester | VA | 5/10/2005 |
| | | 2/11/1999 | | |
| Amputation of fingers | | | | |

Unloading system, depalleter, and splitter were all in automatic when Steve manually pushed a block into the splitter. His hand was on top of the block when the splitter blades cycled breaking and cutting his fingers.

BES 0023

| File / Case Number | Equipment | | Type | | Serial / Model Number |
|---|---|---|---|---|---|
| PLN   073 | Block Splitter | | | | |

| Plaintiff Name | | Plant | | | |
|---|---|---|---|---|---|
| Delfreo, John | | A. Duchini, Inc. | | | |

| Award | | Equipment Dir. | | State | Date of loss | Task Performed |
| | | unk. | | PA | 7/26/1988 | n/a |

Equipment involved in task at time of injury: clearing jam

| Body Part Loss |
|---|
| L hand - crushed |

**Description**

A block had gotten caught on splitter - Delfreo stopped splitter to straighten block & when he restarted splitter, amchine threw block backwards & crushed his hand betwn. 2 units.
NOTE:  re:  Block Splitter - no other info. available on type of splitter involved in this injury.

BES 0024

B. Budnik                                                                  08 NV 06

| E & R SPLITTER SOLD THROUGHT BESSER COMPANY FROM 1996 TO 2006 |
|---|

| YEAR | INVOICE DATE | COMPANY NAME | LOCATION | MODEL NUMBER | ORDER NUMBER | QUANTITY PER YEAR |
|---|---|---|---|---|---|---|
| 2006 | NONE | N/A | N/A | N/A | N/A | 0 |
| 2005 | NONE | N/A | N/A | N/A | N/A | 0 |
| 2004 | 08 AP | Adelaja | Nigeria | CM-18 | BC311377 | 1 |
| 2003 | 30 JL | Santsar | Canada | CM-24-HS | BC288696 | 1 |
| 2002 | 25 MR | Atlas | Canada | CM-24-HS | BC249244 | 2 |
|  | 10 AP | Atlas | Canada | CM-24-HS | BC249243 |  |
| 2001 | 10 JL | Hunan | China | CM-24-GF | BC230894 | 2 |
|  | 30 NV | JSC | Kirgyz | CM-24-GF | BC241383 |  |
| 2000 | 24 MY | Stone | Charleroi, PA | CM-24-GF | BC198497 | 2 |
|  | 20 DE | East Grace | China | CM-24-GF | BC214322 |  |
| 1999 | 20 AP | Samcrete | Egypt | CM-24-HFRC | BC166037 | 6 |
|  | 26 AP | Fundaciones S.A. | Panama | CM-24-GF | BC171333 |  |
|  | 28 AP | Cement | Hudson, FL | CM-24-HS | BC165933 |  |
|  | 28 MY | Hit Group | China | CM-24-HFRC | BC166006 |  |
|  | 28 MY | Hit Group | China | CM-24-HFRC | BC166005 |  |
|  | 18 AU | Bloques | Spain | CM-24-HV | BC178076 |  |
| 1998 | 31 MR | Cemento | Argentina | CM-24-GF | BC137871 | 6 |
|  | 15 AP | Prefabricados | Spain | CM-24-HF | BC142936 |  |
|  | 28 MY | Rivera | Spain | CM-24-HV | BC143887 |  |
|  | 08 JL | Arigibetao | Portugal | CM-24-HV | BC143883 |  |
|  | 24 JL | A. Fenollar | Spain | CM-24-HV | BC143958 |  |
|  | 29 OC | Pretensados | Spain | CM-24-HV | BC154582 |  |
| 1997 | 09 JA | Fundaciones S.A. | Panama | CM-18 | BC110144 | 9 |
|  | 31 JA | Wonder Link | Taiwan | CM-24-HFRC | BC1C7821 |  |
|  | 04 FE | Emin | Chile | CM-18 | BC112933 |  |
|  | 26 FE | Central | Sunbury, PA | CM-24-HFRC | BC111819 |  |
|  | 26 FE | Couch | Dothan, AL | CM-24-HFRC | BC115233 |  |
|  | 19 MY | Great Sea | China | CM-24-HFRC | BC116639 |  |
|  | 13 JE | Comac | Rochester, NY | CM-24-GF | BC121156 |  |
|  | 24 JE | Jose Chediack | Argentina | CM-24-HV | BC116554 |  |
|  | 30 JE | Southwest | Alleyton, TX | CM-24-HFRC | BC122126 |  |
| 1996 | 30 JA | Multi-Usage | Malaysia | CM-24-HFRC | BC84888 | 13 |
|  | 27 FE | Cement | Hudson, FL | CM-24-HFRC | BC92270 |  |
|  | 29 MR | Vibrant | India | CM-24-GF | BC83426 |  |
|  | 29 AP | Tianjin - Sureblock | China | CM-24-HFRC | BC89880 |  |
|  | 20 MY | Shanghai - Sureblock | China | CM-24-HFRC | BC92792 |  |
|  | 31 JL | American - Wangjing | China | CM-24-HFRC | BC96870 |  |
|  | 31 JL | American - Wangjing | China | Pitchmaster II | BC96870 |  |
|  | 12 AU | Paragon | Richmond, TX | CM-24-HFRC | BC95712 |  |
|  | 23 SE | Prefhorvisa | Spain | CM-18 | BC99590 |  |
|  | 10 OC | Vilaje-Vigas | Portugal | CM-18 | BC1C1013 |  |
|  | 23 OC | American | China | CM-24-HFRC | BC1C1347 |  |
|  | 22 OC | Zhuzhai | China | CM-24-HFRC | BC102323 |  |
|  | 26 NV | American | China | CM-24-HFRC | BC101349 |  |
|  |  |  |  |  | TOTAL | 42 |

PLAINTIFF'S EXHIBIT 3  Rousseau  PENGAD 800-631-6989





PLAINTIFF'S EXHIBIT



BES 0002



SCALE: 2X

SCALE: 2X

BES 0003



BES 0004

BES 0005



BES 0006



BES 0007



BES 0008







BES 0009

# Essentials of Plant Safety

## Presented By:

## Duane A. Rondeau

## Director, Technical Services and Product Safety



PENGAD 800-631-6989

PLAINTIFF'S
EXHIBIT
5
Rondeau



# In the Workplace AND at Home!

- Last year there were close to 5,500 workplace deaths

- During that same period 30,000 suffered accidental deaths at home



# OSHA Citations- FY1997

- Concrete Block & Brick (SIC 3271)
  - 103 Block Plant Inspections
  - 199 Citations Totaling $51,427
    - #1 - Control of Hazardous Energy (Lockout/Tagout)
    - #2 - Hazard Communication
    - #3 - Noise Exposure
    - #4 - Mechanical Power Transmission
    - #5 - Guarding- Machine



# OSHA Citations- FY2005

- Concrete Block & Brick (SIC 3271)
  - 46 Block Plant Inspections
  - 309 Citations Totaling $145,799
    - #1 - Control of Hazardous Energy (Lockout/Tagout)
    - #2 - Respiratory Protection
    - #3 - Mechanical Power Transmission
    - #4 - Permit Required Confined Spaces
    - #5 - Occupational Noise Exposure



# OSHA Citations- FY2005
## Concrete Block & Brick (SIC 3271)

### Top 10 OSHA Citations for 2005



# OSHA Data- FY2004

## Concrete Block & Brick (SIC 3271)

**Nature of Injuries and Illnesses**

Fractures, 10%

Cuts & Punctures, 6%

Bruises, 8%

Heat & Chemical Burns, 2%

Sprains & Strains, 41%

Amputations, 1%

Multiple Trauma, 5%

Back Injury, 5%

All Other, 22%





# OSHA Data- FY2004

## Concrete Block & Brick (SIC 3271)

Sources of Injuries and Illnesses

Vehicles, 15%

Handtools, 6%

Floors & Walkways, 15%

All Other, 10%

Worker Motion, 14%

Chemical Products, 2%

Containers, 9%

Machinery, 8%

Parts & Materials, 21%



# What can we expect in the future?



**U.S. Department of Labor**
Occupational Safety & Health Administration

www.osha.gov

MyOSHA | Search | Advanced Search | A-Z Index

**OSHA Industry Concentrations for FY 2003 - FY 2004**

OSHA's Strategic Management Plan for FY 2003-2004 identifies seven target industries for significant reduction in injuries and illnesses. The industries are:

- Landscape and horticultural services (SIC 078)
- Oil and gas field services (SIC 138)
- Canned, frozen and preserved fruits, vegetables and food specialties (SIC 203)
- Concrete and concrete products (SIC 327 except SIC 3274 and SIC 3275)*
- Steel works, blast furnaces, and rolling and finishing mills (SIC 331)
- Ship and boat building and repair (SIC 373)
- Public warehousing and storage (SIC 422)

# Why were these industries selected?



# Actually based of a set of clearly defined criteria:

- At least 5,000 total injury and illness cases;

- A lost workday injury/illness rate (LWDII) of 3.5 or greater;

- No more than 30% of injuries and illnesses involving days away from work caused by ergonomic events;

- At least 50% of injuries and illnesses involving days away from work so severe that they result in at least six days away from work;

- No more than 10% of the injuries involving transportation incidents (including incidents involving motorized industrial vehicles, such as forklifts and backhoes);

- No more than 10% of the injuries involving assaults and violent acts; and,

- Not in the construction sector.

# FY2006 Site Specific Targeting (SST)

- Looks at each site, not just the industry

- Primary list of 4250 establishments initially

- DAFWII Rate of 9 (National average is 1.4)

  - Secondary list between 5 to 9

- DART Rate of 12 (National average is 2.5)

  - Secondary list between 7 to 12

- Will also select 175 establishments with reported "Low" rates in an industry with high national rates for the purpose of reviewing the actual degree of compliance

- Finally, the agency will include some of the establishments that did not respond to the 2005 data survey

# High Rate Workplaces

- In April 2006, OSHA sent 14,000 letters to "High Rate" workplaces (DART of 6+)

- The letters urged employers to hire outside safety firms or to utilize consultants from insurance and worker's compensation carriers and OSHA CET

- 26 Letters sent to Concrete products producers (SIC 3271)



# www.osha.gov



- Compliance
- Assistance
- Cooperative Programs
- Newsroom
- Safety & Health Topics
- Statistics
  - Inspection Data
  - SIC Searches



# www.osha.gov

**U.S. Department of Labor**
Occupational Safety & Health Administration
**www.osha.gov**

Site Index: A B C D E F G H I J K L M N O P Q R S T U V W X Y Z

October 8, 2002

## Statistics & Data

### Inspection Data

▸ Inspection Detail Definitions

- **Establishment Search**
  is a query tool which locates OSHA inspections which were conducted within a particular establishment

- **Search Inspections by SIC**
  is a query tool which locates OSHA inspections which were conducted within a particular industry group

- **Inspection Information**
  enables access to information about an inspection when the activity number identifying the inspection is known

- **Accident Investigation Search**
  enables the user to search the text of the Accident Investigation Summaries (OSHA-170 form) which result from OSHA accident inspections.

- **Frequently Cited OSHA Standards**
  is a query tool which allows the user to determine the most frequently cited Federal and State OSHA standards for a given SIC code. The SIC code may be determined by accessing the online SIC Manual

- **SIC Manual**
  provides the ability to search the alphabetic index of the 1987 version manual by keywords; access detailed information for a specified SIC, Division, or Major Group; and browse through the manual structure

- **NAICS Manual**
  NAICS Manual - During 2003-2004, OSHA will be transitioning to NAICS, the North American Industry Classification System, a 6-digit industry grouping system developed in cooperation with Canada and Mexico.

- **Industry Profile for an OSHA Standard**
  displays the industry SICs in which a specified Federal OSHA standard is most often cited. Information is shown at the SIC division and 2,3,4-digit SIC levels

## Statistics

- **BLS Workplace Injury, Illness and Fatality Statistics**

- **FedStats** - The gateway to statistics from over 100 U.S. Federal agencies.

▴ Back to Top

www.osha.gov          www.dol.gov

**Compliance**
- Assistance
- Area & Populations
- Consultation
- OSHA
- Posters
- Recordkeeping
- Training

**Cooperative**
- Programs
- Strategic
- Partnerships
- VPP

**Newsroom**
- News Releases
- Publications
- Speeches
- Testimonies

**Safety/Health**
- Topics
- Ergonomics
- Pathogens
- Construction
- Maritime

**International**
- US-EU Cooperation

Find it in DOL

**Statistics**
- Inspection Data
- SIC Search

- **Search Inspections by SIC Code**
  − SIC 3271 - Concrete Block and Brick
  − SIC 3272 - Concrete Products, Except Block and Brick
  − SIC 3273 - Ready-Mixed Concrete

- **Frequently Cited Standards for a SIC Code**



# www.osha.gov

- Select SIC Code
- Company size by number of employees

---

**U.S. Department of Labor**
Occupational Safety & Health Administration
**www.osha.gov**

## Frequently Cited OSHA Standards

This page allows the user to list the most frequently cited Federal or State OSHA standards for a specified 2, 3 or 4-digit Standard Industrial Classification (SIC) code. Also available is Industry Profile for OSHA Standard which lists SIC classifications having the most occurrences of a specified OSHA standard.

### Select number of employees in establishment:

- ○ All ○ 1-9 ○ 1-19 ○ 1-99 ○ 20-49
- ○ 20-99 ○ 50-99 ○ 100-249 ○ 1-249 ○ 250+

### Federal or State Jurisdiction: Federal   SIC: [021] [Submit]

The SIC may be specified at the 2, 3, or 4-digit level. A SIC division letter (e.g., D, D's Manufacturing) may also be entered. A selection list for SIC Division or Major Group level data will be provided if the SIC selection field is left empty. All industry groups will be selected by entering the word ALL in the SIC selection field.

The data shown reflects OSHA citations issued by the Federal or State OSHA during the specified fiscal year; see definitions. If you are interested in obtaining the SIC code for a particular industry, an online SIC code manual is available which may be searched by keyword or browsed. This manual contains detail descriptions of every SIC category.

Back to Top

Contact Us | Freedom of Information Act | Information Quality | Customer Survey
Privacy and Security Statement | Disclaimers

www.osha.gov          www.dol.gov

Occupational Safety & Health Administration
200 Constitution Avenue, NW
Washington, DC 20210

# www.osha.gov



**OSHA** — Occupational Safety & Health Administration
U.S. Department of Labor

**Standards Cited for SIC 3271, All sizes; Federal**

3271 Concrete Block And Brick

Listed below are the standards which were cited by Federal OSHA for the specified SIC during the period October 2000 through September 2001. Penalties shown reflect current rather than initial amounts. For more information, see definitions.

| Standard | #Cited | #Insp | $Penalty | Description |
|---|---|---|---|---|
| *Totals* | 180 | 24 | 155930.00 | |
| 1910.147 | 25 | 10 | 17225.00 | Mechanical Power-Transmission Apparatus |
| 1910.212 | 24 | 10 | 35775.00 | The Control of Hazardous Energy, Lockout/Tagout |
| 1926.21 | 14 | 10 | 17030.00 | Machines, General Requirements |
| 1910.95 | 11 | 7 | 8975.00 | Guarding of Floor and Wall Openings & Holes |
| 1910.0095 | 10 | 4 | 4650.00 | Occupational Noise Exposure |
| 1910.178 | 10 | 6 | 6775.00 | Powered Industrial Trucks |
| 1910.1200 | 10 | 6 | 0.00 | Hazard Communication |
| 1910.134 | 7 | 3 | 5700.00 | Respiratory Protection |
| 1910.146 | 6 | 3 | 4425.00 | Permit-Required Confined Spaces |
| 1910.179 | 6 | 5 | 10725.00 | Overhead & Gantry Cranes |
| 1910.141 | 6 | 2 | 0.00 | Sanitation |
| 1910.157 | 5 | 3 | 0.00 | Portable Fire Extinguishers |
| 1910.22 | 5 | 3 | 600.00 | Walking-Working Surfaces, General Requirements |
| 1910.24 | 4 | 2 | 9075.00 | Fixed Industrial Stairs |
| 1910.132 | 4 | 2 | 10000.00 | Personal Protective Equipment,General Requirements |
| 1910.176 | 3 | 2 | 7150.00 | Materials Handling, General |
| 1910.215 | 3 | 2 | 975.00 | Abrasive Wheel Machinery |
| 1910.253 | 3 | 2 | 2575.00 | Oxygen-Fuel Gas Welding & Cutting |
| 1910.303 | 3 | 2 | 2000.00 | Electrical Systems Design, General Requirements |
| 5A0001 | 2 | 2 | 975.00 | General Duty Clause (Section of OSHA Act) |
| 1910.151 | 2 | 2 | 1750.00 | Medical Services & First Aid |
| 1904.2 | 2 | 2 | 2575.00 | Log and Summary of Occupational Injuries & Illnesses |
| 1910.184 | 2 | 2 | 0.00 | Slings |
| 1910.304 | 2 | 2 | 3075.00 | Electrical, Wiring Design & Protection |
| 1910.1020 | 1 | 1 | 0.00 | Access to employee exposure and medical records |
| 1910.27 | 1 | 1 | 500.00 | Fixed Ladders |
| 1910.037 | 1 | 1 | 350.00 | Means of Egress, General |
| 1910.037 | 1 | 1 | 1750.00 | Means of Egress, General Requirements |
| 1910.106 | 1 | 1 | 500.00 | Flammable & Combustible Liquids |
| 1910.213 | 1 | 1 | 500.00 | Woodworking Machinery Requirements |
| 1910.242 | 1 | 1 | 675.00 | Hand & Portable Powered Tools & Equipment, General |
| 1910.243 | 1 | 1 | 700.00 | Guarding of Portable Powered Tools |
| 1910.304 | 1 | 1 | 675.00 | Electrical, Wiring Design & Protection |
| 1926.405 | 1 | 1 | 1050.00 | Electrical, Wiring Design & Protection |
| 1926.405 | 1 | 1 | 1050.00 | Elec. Wiring Methods, Components & Equip,Gen'l Use |

## SIC 3271- Block & Brick
- 80 Inspections
- 180 Citations
- $155,930 in Fines
- 2.3 Citations/Inspection
- $866 per Citation

## SIC 3272 - Concrete Products, Except Block & Brick
- 309 Inspections
- 510 Citations
- $434,463 in Fines
- 1.7 Citations/Inspection
- $852 per Citation

## SIC 3273 - Ready-Mix
- 290 Inspections
- 375 Citations
- $233,250 in Fines
- 1.3 Citations/Inspection
- $622 per Citation

# www.osha.gov

**Inspections within SIC - Microsoft Internet Explorer**

File  Edit  View  Favorites  Tools  Help

Back  Forward  Stop  Refresh  Home  Search  Favorites  Media  History  Mail  Print  Edit

Address: http://158.105.4.10/cgi-bin/schgacl

## OSHA
Occupational Safety & Health Administration
U.S. Department of Labor

### Inspections within SIC

This page enables the user to search for OSHA enforcement inspections within a specified SIC. This information may also be obtained for a specified inspection or a specified inspection within a specified establishment. See also search parameters instructions.

⚠ **Warning:** Please read associated information regarding interpreting search results before using.

| | |
|---|---|
| SIC | 8271 |
| | 2, 3, 4-Dgts SIC or A-K |
| Sort | ⊙ Date  ○ Name  ○ State |
| Limits | 100  Display  9999  Process |
| State | All States |
| OSHA Office | All Offices |
| Inspection Date | 2002-01-01  2002-12-31 |
| Emphasis | National |
| Optional Info | All Options |
| FedAgn Code | |

All Owner  Fed & State  ☑ Show Viol  Any Scope

Submit  Reset

### NOTE TO USERS

The Integrated Management Information System (IMIS) was designed as an information resource for in-house use by OSHA staff and management, and by state agencies which carry out Federally-approved OSHA programs. Access to this OSHA work product is being afforded via the Internet for the use of members of the public who wish to track OSHA interventions at particular work sites or to perform statistical analyses of OSHA enforcement activity. Its critical that users of this data understand several aspects of the system in order to accurately use the information.

The source of the information in this IMIS is the local Federal or state office in the geographical area where the activity occurred. Information is entered as events occur in the course of agency activities. Until cases are closed, IMIS entries concerning specific OSHA inspections are subject to continuing correction and updating, particularly with regard to citation items, which are subject to modification by amended citations, settlement agreements, or as a result of contest proceedings. THE USER SHOULD ALSO BE AWARE THAT DIFFERENT COMPANIES MAY HAVE SIMILAR NAMES AND CLOSE ATTENTION TO THE ADDRESS MAY BE NECESSARY TO AVOID MISINTERPRETATION.

The Integrated Management Information System (IMIS) is designed and administered as a management tool for OSHA, to help in direct its resources. When IMIS is put to new or different uses, the data should be verified by reference to the case file and confirmed by the appropriate Federal or state office. Employers or employees who believe a particular IMIS entry to be inaccurate, incomplete or out-of-date are encouraged to contact the OSHA field office or state plan agency which originated the entry.

Contact Us | Freedom of Information Act | Information Quality | Customer Survey
Privacy and Security Statement | Disclaimers



# www.osha.gov



**OSHA** Occupational Safety & Health Administration
U.S. Department of Labor

Details for the inspections listed below may be obtained in two ways. The first method is simply following the inspection activity number link. The second method is marking the check boxes for selected inspections and pressing the *Get Detail* button. Information referred to the selected cases will be returned and may then be browsed or printed. For information on the data elements displayed below, see definitions.

*Please note that inspections which are known to be incomplete will have the identifying Activity Nr shown in italic. Information for these open cases is especially dynamic; e.g. violations may be added or deleted.*

### Search Options

| SIC | Date Range | RID/State | Limits | Other Options |
|---|---|---|---|---|
| 3271 | 2000-01-01/2002-12-31 | All NY 1000999 | | |

**Found 17 - Processed 17 - Selected 17 - Displayed 17**

| | Activity | Opened | Rpt ID | St | Type | Sep | Own | SIC | Vio | Establishment Name |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 304465322 | 03/28/2001 | 0213100 | NY | Planned | Nchi | Pvt | 3271 | | Old Castle Avg National |
| 2 | 304464441 | 02/22/2001 | 0213100 | NY | Planned | Nchi | Pvt | 3271 | | |
| 3 | 304453862 | 06/15/2001 | 0213100 | NY | Planned | Comp | Pvt | 3271 | 4 | Colona Block Co. Inc |
| 4 | 304453862 | 04/27/2001 | 0213100 | NY | Planned | | Pvt | 3271 | 5 | Deadriver Block & Supply Co |
| 5 | 303572380 | 03/15/2001 | 0213100 | NY | Planned | | Pvt | 3271 | 6 | Deadriver Block & Supply Co. |
| 6 | 303572539 | 03/15/2001 | 0213100 | NY | Planned | | Pvt | 3271 | 1 | Cranevill Block Co. Inc |
| 7 | 303376514 | 03/16/2001 | 0213100 | NY | Monitoring | Pvt | | 3271 | | Drake Concrete Products, Inc |
| 8 | 303379281 | 01/09/2001 | 0213100 | NY | Planned | | Pvt | 3271 | 11 | Federal Block Corporation |
| 9 | 303377428 | 12/05/2000 | 0213100 | NY | Planned | | Pvt | 3271 | 1 | Mondfort Bros, Inc |
| 10 | 305130122 | 11/16/2000 | 024700 | NY | Other | RcRv | Pvt | 3271 | | Nicolia Concrete Products, Inc |
| 11 | 302954370 | 11/15/2000 | 021590 | NY | Complaint | | Pvt | 3271 | 1 | Phelp Cement Products Inc |
| 12 | 303487262 | 11/15/2000 | 021590 | NY | PrgdPlanned | | Pvt | 3271 | | Phelp Cement Products Inc |
| 13 | 303320226 | 08/07/2000 | 0213100 | NY | Monitoring | | Pvt | 3271 | | Drake Concrete Products, Inc |
| 14 | 303369534 | 07/24/2000 | 0213100 | NY | Accident | Comp | Pvt | 3271 | 4 | Unilock N Y Inc. |
| 15 | 303368624 | 07/14/2000 | 0213100 | NY | Accident | | Pvt | 3271 | 1 | Glens Falls Ready Mix Inc |
| 16 | 303286529 | 07/22/2000 | 0213100 | NY | Complaint | | Pvt | 3271 | | Drake Concrete Products, Inc |
| 17 | 302366412 | 03/15/2000 | 0213100 | NY | Complaint | | Pvt | 3271 | 6 | Island Dock Inc |

**Get Detail** | **All** | **Reset**

Contact Us | Freedom of Information Act | Information Quality | Customer Survey
Privacy and Security Statement | Disclaimers





# www.osha.gov

**OSHA**
Occupational Safety & Health Administration
U.S. Department of Labor

## Violation - Glens Falls Ready Mix Inc

**Standard Cited:** 19100219 D01 *Mechanical Power-Transmission Apparatus*

### Violation Information

| | |
|---|---|
| Nr: 303509649 | Citation: 01001A  Issuance: 08/16/2000  Report ID: 0213100 |
| Viol Type: Serious | Nr Instances: 1  Contest Date: |
| Abatement Date: 08/24/2000 X | Nr Exposed: 4  Final Order: |
| Initial Penalty: 600.00 | REC:  Emphasis: |
| Current Penalty: 249.00 | Gravity: 02  Haz Category: |

### Penalty and Failure to Abate Event History

| Type | Event | Date | Penalty | Abatement | Type | FTA Insp |
|---|---|---|---|---|---|---|
| PEN Z | Issued | 08/16/2000 | 600.00 | 08/24/2000 | Serious | |
| PEN I | Informal Settlement | 09/12/2000 | 249.00 | 08/24/2000 | Serious | |

Contact Us | Freedom of Information Act | Information Quality | Customer Survey
Privacy and Security Statement | Disclaimers

# Control of Hazardous Energy

- Mandatory Standard in January 1990

- Implement procedures to shut down equipment, isolation from energy source(s), and preventing the release of potentially hazardous energy while maintenance and servicing activities are being performed.

- Commonly known as Lockout/Tagout



# Control of Hazardous Energy



# Control of Hazardous Energy

## Types of Energy Sources:

- Electrical
  - Electricity
- Mechanical
  - Springs
- Hydraulic
  - Power Units
  - Accumulators

# Control of Hazardous Energy
## Types of Energy Sources

- Pneumatic
  - Air Supply
- Gravity
  - Spade Elevator
  - Stripper Head Frame
  - Skiploader
- Chemical
- Thermal
  - Heated Stripper Shoes

# Control of Hazardous Energy

- Lockout vs. Tagout

  - <u>Lockout</u> is a method for keeping equipment from being set into motion.

    - Putting a disconnect switch, circuit breaker, valve, or other energy isolating mechanism in a safe or off position.

    - Placing a device over the energy isolating mechanism to hold it in place.

  - Attaching a lock so that the equipment can't be energized

# Control of Hazardous Energy

- Lockout vs. Tagout
  - <u>Tagout</u> is a written warning attached to an energy isolating device which has been placed in a safe or off position



# Control of Hazardous Energy

- When should equipment be locked and/or tagged out?
    - During troubleshooting
    - Before performing maintenance
    - Before making repairs
    - During set-ups



# Control of Hazardous Energy
## Employer's Responsibility

- Develop an energy control program

- Use Locks when equipment can be locked out

- Ensure that new equipment or rebuilt equipment can accommodate locks

- Use and effective tagout program to ensure safety when locks cannot be used

# Control of Hazardous Energy
## Employer's Responsibility

- Identify and Implement specific procedures (in writing) for the control of hazardous energy

- Obtain standardized locks and tags to ensure effectiveness and to identify the employees using them

- Institute procedures for removal of lockout/tagout devices

# Control of Hazardous Energy

## Employer's Responsibility

- Train employees on specific energy control procedures

- Use training reminders

- Schedule annual inspections of the control procedures

# Control of Hazardous Energy

- Besser decal provided on each electrical control panel

**SAFETY INSTRUCTIONS**

**INSTRUCCIONES DE SEGURIDAD**

**SUGGESTED LOCKOUT PROCEDURE**

1. Announce lockout to other employees.
2. Turn power off at main panel.
3. Lockout power in off position.
4. Put key in pocket.
5. Clear machine of all personnel.
6. Test lockout by hitting run button.
7. Block, chain or release stored energy sources.
8. Clear machine of personnel before restarting machine.

# Control of Hazardous Energy

- What about mold changes ???
  - OSHA standard 19.147 (a) (2) (ii) (B)
    - Minor tool changes and adjustments and other minor tool servicing activities which take place during normal production operations are not covered by this standard if they are routine, repetitive and integral to the use of the equipment for production, *provided that the work is performed using alternative measures which provide effective protection.*

# Control of Hazardous Energy

- What are the alternate measures???
  - Documented procedure for changing molds
    - Use of lockable E-stops
    - Attendant at the control station
    - Inspection of equipment prior to re-energizing
    - Start-up warning horn
  - Train employees on the procedure
  - Document the training session

# Mechanical Power Transmission

- Hazards
  - **Design** them out
  - **Guard** them
  - **Warn** about them







# Perimeter Guarding



**Perimeter Guarding**





**Perimeter Guarding**



**Perimeter Guarding**



# Mechanical Power Transmission

## SAFETY SIGNS

| Sign | Description | Required |
|---|---|---|
| 1 | All Panels | 1 |
| 2 | Mixer | 1 |
| 3 | Concrete Products Machine | 4 |
| 4 | Depalleter | 1 |
| 5 | Skiploader | 1 |
| 6 | Skiploader/Mixer Platforms | 4 |
| 7 | Skiploader/Mixer Platforms | 8 |
| 8 | Vertical: Pallet Transport System | 8 |
| | Horizontal: LSC-40/LSC-100 | 2 |
| 9 | Pallet Transport System | 6 |
| 10 | Besser-Matic | 4 |
| 11 | Besser-Matic | 4 |
| 12 | Skiploader | 4 |
| 13 | All Panels | 4 |
| 14 | Overhead Block Transfer | 1 |
| | Block Pusher | 4 |
| 15 | Pallet Transfer System | 2 |
| 16 | Concrete Products Machine | 4 |
| 17 | Conveyors | 2 |
| 18 | Cuber | 12 |
| | Cuber | 8 |
| | Block Turnovers | 3 |
| | Slat Conveyors | 2 |



# Mechanical Power Transmission



**1**

⚠ DANGER
⚠ PELIGRO

High voltage.
Follow lockout
procedure before
servicing panel
or machine.

Large: 11323SF0409
High Voltage
Width 4 1/2 inch
Height 9 5/8 inch
Small: 11323SF0204
High Voltage
Width 2 inch
Height 4 1/6 inch

**2**

⚠ DANGER
⚠ PELIGRO

Mixer blade hazard.
Close front panel
and stay out
during operation.
Follow lockout
procedure before
servicing.

11323TF0410
Mixer Blade Hazard
Width 4 1/2 inch
Height 10 1/4 inch

**3**

⚠ DANGER
⚠ PELIGRO

Crush hazards.
Stay clear of
machine.
Follow lockout
procedure
before servicing.

Vertical: 11324DF0307
Crush Hazard
Width 3 1/2 inch
Height 7 1/2 inch
Horizontal: 11323RF0604
Crush Hazard
Width 6 5/8 inch
Height 4 inch

**4**

⚠ DANGER
⚠ PELIGRO

Nip points.
Stay clear. Follow
lockout procedure
before servicing.

11469ZF1006
Nip Points
Width 5 3/4 inch
Height 9 1/2 inch

**5**

⚠ DANGER
⚠ PELIGRO

Crush hazard.
Stay clear.
Follow lockout
procedure before
servicing.

11469BF0606
Crush Hazard
Width 6 1/4 inch
Height 9 1/2 inch

**6**

⚠ WARNING
MUCHO
CUIDADO

Fall hazard.
Stay clear.

11469BF0604
Fall Hazard
Width 4 1/2 inch
Height 7 3/4 inch

# Mechanical Power Transmission



**7**

⚠ WARNING
⚠ MUCHO CUIDADO

Falling objects.
Hard hat area.

1146080F0005
Falling Objects
Width 4 3/4 inch
Height 8 inch

**8**

⚠ DANGER
⚠ PELIGRO

Crush hazard.
Stay clear of car
and crawler.
Follow lockout
procedure before
servicing.

Vertical: 1132A4F0410
Crush Hazard
Height 10 inch
Horizontal: 1132A6F1005
Crush Hazard
Width 10 inch
Height 5 3/4 inch

**9**

⚠ DANGER
⚠ PELIGRO

Crush hazard.
Stay clear of
transfer area.
Follow lockout
procedure before
servicing.

1132A2F0409
Crush Hazard
Width 4 inch
Height 9 5/8 inch

**10**

⚠ DANGER
⚠ PELIGRO

Falling objects.
Stay clear of
transfer area.
Follow lockout
procedure before
servicing.

1132A3F0410
Falling Objects
Width 4 1/2 inch
Height 10 inch

**11**

⚠ DANGER
⚠ PELIGRO

Shear hazard.
Fall hazard.
Stay clear. Follow
lockout procedure
before servicing.

1149B1F1006
Shear and Fall Hazards
Width 5 3/4 inch
Height 9 3/4 inch

**12**

SAFETY
INSTRUCTION
SUGGESTED
LOCK-OUT
PROCEDURE

1132A9F0410
Safety Instructions Decal –
Suggested Lock-out Procedure
Width 4 inch
Height 10 inch

# Mechanical Power Transmission



**13**
11324BF1006
Crush Hazard
Width 10 inch
Height 5 3/4 inch

⚠ DANGER
⚠ PELIGRO

Crush hazard.
Stay clear of
machine. Follow
lockout procedure
before servicing.

**14**
11324BF1006
Crush Hazard
Width 10 inch
Height 6 inch

⚠ DANGER
⚠ PELIGRO

Crush hazard. Stay
clear of transfer
area. Follow
lockout procedure
before servicing.

**15**
11324IF0606
Crush and Pinch Points
Width 6 5/8 inch
Height 4 inch

⚠ DANGER
⚠ PELIGRO

Crush and pinch
points. Stay clear
of machine. Follow
lockout procedure
before servicing.

**16**
11324F0704
Nip Hazard
Width 7 inch
Height 4 1/2 inch

⚠ WARNING
⚠ MUCHO CUIDADO

Nip hazard,
stay clear of
conveyor. Follow
lockout procedure
before servicing.

**17**
11324FF1006
Crush Hazard
Width 10 inch
Height 6 inch

⚠ DANGER
⚠ PELIGRO

Crush hazard.
Follow lockout
procedure and
secure elevator
before servicing.

**18**
11325BF1006
Crush and Pinch Hazard
Width 10 inch
Height 6 inch

⚠ DANGER
⚠ PELIGRO

Crush and pinch
points. Stay off
conveyor. Follow
lockout procedure
before servicing.

# Occupational Noise Exposure

- The employer **shall** develop and implement a noise monitoring program with the following criteria:

  – ID employees for inclusion in the program

  – All sound levels from 85dBA to 130dBA

  – Instruments shall be calibrated

  – Noise monitoring shall be repeated when there is a change in noise levels

# Occupational Noise Exposure

- Duration (Hours)     Sound Level (dBA)

| Duration (Hours) | Sound Level (dBA) |
|---|---|
| 8 | 85 |
| 6 | 87 |
| 4 | 90 |
| 3 | 92 |
| 2 | 95 |
| 1.5 | 97 |
| 1 | 100 |
| 0.5 | 105 |



# Equipment Noise Levels
## Average 8 Hour Weighted Exposure

- Block Machine Operator - 102 dBA
- Mixer Operator - 99 dBA
- Cuber Operator - 98 dBA
- Fork Lift Operator - 94 dBA



# Noise Reduction Strategies

- Ear Protection
  - Ear Muffs
  - Ear Plugs
- Sound Absorbing Materials
  - Walls
  - Ceilings
- Sound Enclosures
  - Concrete masonry walls
  - Insulated plywood partitions
  - Pre-manufactured insulated panels

# Noise Reduction Strategies

- Operator Location
  - Position the operators in designated areas throughout the plant
  - Eliminate operators by automating equipment
- Quieter Equipment
  - SmartPac Vibration vs. Standard Vibration
  - Electro-Mechanical vs. Hydraulic Power Units
  - Vibration Isolators



# Noise Reduction Strategies

- Machine Maintenance
  - Correct adjustments
  - Replace worn components
- Plant Design/Layout
  - Compartmentalize
    - Raw Material Handling
    - Production
    - Curing
    - Packaging
    - Maintenance



# Confined Spaces

- Established by OSHA in 1993 to reduce the risk of entry into confined spaces which were potentially fatal.





# Confined Spaces

- What is a confined space?
  - The size and shape allows a person to enter it
  - The space has limited openings for workers to enter and exit
  - The space is not designed for continuous occupancy



# Confined Spaces

- What makes it "Permit-Required"
  - One or more of the following:
    - Contains or has a potential to contain a hazardous atmosphere
    - Contains a material that has the potential for engulfing an entrant
    - Has an internal configuration such that an entrant could be trapped or asphyxiated by inwardly converging walls or by a floor which slopes downward and tapers to a smaller cross-section
  - Contains any other recognized serious safety or health hazard



# Confined Spaces

- What could we find in a block plant?
  - Cement Silos
  - Aggregate Bins
  - Pits
  - Hoppers
  - Mixers
  - Kilns



# Hazard Communication

- OSHA established this standard to protect workers from exposure to hazardous chemicals

- This standard establishes guidelines for employers to create a written program to address hazardous chemicals





# Hazard Communication

# Hazard Communication

- Chemical Inventory
- Container Labeling
- Material Safety Data Sheets (MSDS)
- Employee Training
- Personal Protective Equipment
- Emergency Response
- Hazards of Non-Routine Tasks
- Informing Other Employers
- Posting





# Hazard Communication











# Respiratory Protection

- Program to ensure that proper respirators are provided and are effective in protecting the health and safety of employees working in contaminated atmospheres.

- Respirator Selection
  - Selected based upon the hazards to which the worker is exposed.
  - Typical types are dust and mist, organic vapor, welding fume, and powered air purifying.



# Respiratory Protection

- Medical Evaluation
  - A confidential medical questionnaire is administered and sent to a physician or licensed health care provider.
  - The physician keeps the questionnaire on file and informs the employer if the employee is capable of wearing a respirator. On occasion, a follow-up exam may be required to make this determination.

- Training
  - Fit testing
  - Correct wearing
  - Functions, capabilities, and limitations
  - Maintenance, cleaing, and storage

# Powered Industrial Trucks

- Forklifts play an important role in many workplaces. However, each year dozens of workers die and others are seriously injured in approximately 35,000 lost time accidents.

- Develop a forklift safety program
  – Provide safe operating procedures
  – Ensure employees make daily inspections
  – Provide training every 3 years and issue operating permits
  – Maintain training records



# Powered Industrial Trucks

- Highlights
  - All forklifts must have a permanent, legible serial number tag indicating the maximum lifting capacity
  - Must have these safety features
    - Brakes, parking brake, and horn
  - Never modify a forklift without the written consent of the manufacturer
  - Never lift a person with the forks without the use of a safety platform with guardrails
  - Always report accidents AND near misses



# Safety and the Bottom Line

- Direct Costs
  - In the US, each worker must produce approximately $1500 of good or services to cover worker's compensation costs
- Indirect Costs
  - Up to 10 times the cost of direct costs
- Fewer workers compensation claims
- Lower insurance costs
  - Less paperwork
- Reduced legal fees
- Productivity Improvements
- Good corporate citizen (Reputation)

# What is the safety culture at your company?

- The SWAMP?
- Traditional?
- World Class?



# SWAMP

## Safety Without Any Management Process

**SAFETY RESPONSIBILITY:** Not Recognized/Rejected
**PERCEIVED:** As a "Burden"

### MANAGEMENT CHARACTERISTICS:

- **Accidents are Accepted**
- **Production Compromised by Safety**
- **Planning - Minimal; Reactive; Short Term**
- **Adversarial Relationship - Ops vs Safety**
- **Lacking HR Policies/Procedures**

- •One Way Communication - Fear Based
- •My Way or The Highway
- •"Make Do/Make Fit" Approaches
- •Minimal Employee
  Involvement/Interaction

### ORGANIZATIONAL IMPACTS:

| Negative Business Impact | Excessive Losses | Poor Employee Relations | Statutory Ignorance |
|---|---|---|---|
| High Insurance Cost | Poor Injury Rates | Blame Others | Citations |
| Less Competitive | High Frequency | Them vs Us | Repeat Violations |
| On Bids | High Severity | Labor vs Management | Complaints |
| | | No Company Loyalty | Litigation |
| | | Morale Very Low | |

# Traditional

**SAFETY RESPONSIBILITY: Not Understood (Staff Function)**
**PERCEIVED: As a "Cost"**

## MANAGEMENT CHARACTERISTICS:

- Accidents are "Excused" Away
- Recognized Problems - Unwilling/Unable to Solve
- Programs/Campaigns - Short Lived
- Fix the Symptoms, Not the Cause
  Results (Only) Measured – Results Driven
- Not Quite Sold - Willing To Go Halfway (Easy Road)
- Likes "Off the Shelf" Canned Programs
- High Visibility - Many Labels - Little Results

- Authority Conflicts - Passive Resistant
- Line "Accountability" Lacking/Inconsistent
- Expect Safety Department to Run Safety
- Go Through Motions

## ORGANIZATIONAL IMPACTS:

Set up for Failure
Inspection Heavy
Reactive Management
Employees Reject Changes

Quick Fix Programs
Committees = Gripe Sessions
Supervisors Ignore Safety Directives
Repetitive Conditions

# World Class

**SAFETY RESPONSIBILITY:** Line Management Owned/Driven
**PERCEIVED:** As a Good Business "Investment"

## MANAGEMENT CHARACTERISTICS:

- **Accidents Are Intolerable** - There Are No Excuses
- **Safety Isn't Safety** - Its Management Effectiveness
- **Decisions** - Time Consuming and Difficult
- **Planning** - Long Term - 3 to 5 Years
- **Responsibilities & Expectations** - Clearly Defined
  And Accepted
- **Efforts** "Closely Measured and Responded To
- **Safety Has a Sense of Urgency

- **No "Glitz" or Hype
- **Employee Centered** –
  Win/Win
- **Communication** -
  Informal, Open, Encouraged
- **Management Personnel are Personally Involved
- **Line Accountability is Standard Practice

## ORGANIZATIONAL IMPACTS:

| Positive | Good | Integrated | Equal |
|---|---|---|---|
| Business Impact | Employee Relations | Quiet | To Cost |
| More Business | Employee Morale high | "Safety" Loses Identity | To Quality |
| There Aren't (M)any Accidents | Safety Management | There is No "Program" | To Production |

# Elements of a World Class Safety System

- Demonstrate a personal commitment
- Audit work activity
- Training
- Get employees involved
- Hold employees accountable
- Make safety a line responsibility
- Focus on people first
- Do not compromise safety



# You Don't Want to be The SWAMP

# Industry Resources

- National Concrete Masonry Association
  - Block Plant Safety Software (New Release)
    - $150 per plant
    - Yahoo Safety Chat Group
- www.osha.gov
  - State OSHA Consultation, Education, and Training Division
- Besser Company

