IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DAVID JACKSON, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>E&R MANUFACTURING )<br>COMPANY, INC., CARY MACKEY, )<br>BESSER COMPANY, )<br>)<br>Defendants. ) | CIVIL ACTION NO.<br>2:06-CV-0412-WHA |

### DEFENDANT BESSER COMPANY'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant Besser Company ("Besser"), by and through its counsel, Baker & Hostetler LLP and Haskell Slaughter Young & Gallion, LLC, submits its *Reply Brief in Further Support of its Motion for Summary Judgment* and states as follows:

I.   **INTRODUCTION**

Elevating quantity over quality, the plaintiff David Jackson ("Jackson") submitted a fifty-one page *Response and Brief in Opposition to Defendant Besser Company's Motion for Summary Judgment*, along with hundreds of pages of "evidentiary" materials (the "Opposition"), yet nowhere in the Opposition does he identify a single, genuine issue of material fact sufficient to preclude summary judgment. At the risk of allowing the plaintiff to lead the Court astray with unsupported allegations[1], legal inaccuracies[2] and specious efforts to cloud relevant issues and dodge summary judgment, several initial observations are necessary.

---

[1] For example, Jackson claims that "Defendants have documented 9 accidents involving hand injuries and amputations suffered by workers clearing debris on their splitter machines." Opposition at 12. Jackson offers Exhibit 10 to support this contention; however it does not support that contention. Rather,
(continue)

The seller of a product is not an insurer against all harm that may be caused by the use of the product, and the seller is not obligated to produce an accident-proof or injury-proof product. *Browder v. General Motors Corp.*, 5 F. Supp.2d 1267, 1281 (M.D. Ala. 1998). Similarly, "proof of an accident and injury is not in itself sufficient to establish liability under the AEMLD." *Id.* Some products by their nature place both users and bystanders in some measure of danger. *Motley v. Bell Helicopter Textron, Inc.*, 892 F.Supp. 249, 253 (M.D. Ala. 1995). "A knife or an axe may cut persons, as well as their intended targets" but [s]ellers cannot be held "liable simply because the use of their products involves some risk." *Id.*

This case involves an E&R Manufacturing Company, Inc. CM-24 Hydro Feed Return Corner block splitter (the "Splitter"). The Splitter uses blunt-type blades to split thousands of concrete blocks every day. It runs automatically and blocks are split about every three seconds. There is no doubt that this machine involves some risk and this machine places users and bystanders in some measure of risk. Without question this is especially true when—taking the plaintiff's allegations as true—the plaintiff's employer put production ahead of worker safety

---

(continued)
at best Exhibit 10 may document two accidents that may be arguably similar to Jackson's, involving arguably similar splitter machines. Opposition Exhibit 10; Opposition Exhibit 4 [Rondeau Dep. at 12:2-12]. *See* Section IIB(4b) *infra*.

[2] As an example, Jackson devotes an entire section of his Opposition to *Dennis v. American Honda Motor Corp.*, 585 So.2d 1336, 1339 (Ala. 1991) for the proposition that contributory negligence is not available as an affirmative defense in this case. This is grossly inaccurate. In *Campbell v. Cutler Hammer, Inc.*, 996 F.2d 1164, 1166 (11th Cir. 1993), the Eleventh Circuit Court of Appeals certified the following question to the Alabama Supreme Court: "Does contributory negligence bar recovery in an Alabama Extended Manufacturer's Liability Doctrine case if a proximate cause of the accident was the unreasonably dangerous condition of the product, but a contributing proximate cause of the accident was the plaintiff's failure to use reasonable care to avoid injury to himself." In *Campbell v. Cutler Hammer, Inc.*, 646 So.2d 573, 574 (Ala. 1994), the Alabama Supreme Court answered the certified question in the affirmative. Thus, the viability of the contributory negligence defense in AEMLD cases is not in question. None of this controlling authority was pointed out in the Opposition.

and was grossly negligent in training its employees.[3] Opposition at 5. In such circumstances, accidents are all but inevitable.

Jackson would have the Court hold Besser strictly liable. But under Alabama law merely because Jackson can prove he was injured on the Splitter is insufficient to establish Besser's liability. Instead, the Alabama Supreme Court created the AEMLD as a fault-based concept, one that applies equally to both plaintiffs and defendants. Putting aside the plaintiff's scandalous and unsupported allegations, this is the context in which this case must be decided.

## II. ARGUMENT

### A. *Jackson Cannot Prove That The Splitter Was Defective Under The AEMLD Because The Court May Not Consider Jackson's Expert Affidavits.*

To survive summary judgment, Jackson must present substantial evidence to establish a defect under the AEMLD. *Browder v. General Motors Corp.*, 5 F.Supp.2d 1267, 1281 (M.D. Ala. 1998). In a case such as this, expert testimony is required to make such a showing. *See id.* Section 2 of the Court's Amended Uniform Scheduling Order dated October 23, 2006 ("Scheduling Order") provides, "the discussion of evidence in the brief must be accompanied by a specific reference, by page and line, to where the evidence can be found in a supporting deposition or document. **Failure to make such specific reference will result in the evidence not being considered by the court.**" Here, in every instance where Jackson cites to his experts' affidavits, he fails to provide specific references, by page or line, to where the supporting evidence can be found. For this reason, under the Scheduling Order, the Court must not consider Jackson's expert affidavits. In the absence of the expert affidavits, Jackson cannot survive summary judgment.

---

[3] This casts serious doubt as to whether the plaintiff can prove a defective product proximately caused his injuries. This also raises serious policy questions for Alabama; if manufacturers and sellers are held liable for worker injuries, there is little incentive to maintain a safe workplace.

3

Even if the Court considers the expert affidavits, they both contain conclusory allegations, speculation and conjecture, making them unreliable and inadmissible. *See Bloodsworth v. Smith & Nephew*, Inc., 476 F.Supp. 2d 1348, 1354 (M.D. Ala. 2006); *Browder v. General Motors Corp.*, 5 F.Supp.2d 1267, 1282-83 (M.D. Ala. 1998). For example, Dr. Paul's affidavit [Opposition Ex. 11] simply provides a generic list of guarding mechanisms and contends that any of them would have prevented Jackson's accident. Dr. Paul, however, conducted no tests, no research and no feasibility or field studies to determine whether his theories would work. He can only speculate that his theories have applicability in the rough and tumble block plant environment, a long way from his MIT classroom. Simply put, Dr. Paul has no factual evidence to support any of his speculative theories for an effective alternative design. Dr. Booeshaghi's affidavit [Opposition Ex. 12] is even more deficient, containing only conclusory allegations, pure speculation and blatant conjecture. Dr. Booeshaghi's affidavit contains no factual support for his naked conclusions. He has conducted no tests or analyses; he simply offers speculative opinions. Neither experts' affidavit addresses the relevant timeframe—1997—when the Splitter was sold, making their speculative conclusions even less reliable.

In short, Jackson may use neither affidavit in opposition to Besser's summary judgment motion. Without expert testimony, Jackson cannot prove his AEMLD case.

**B.    *Jackson's Failure To Warn Claims, AEMLD Claim For Defective Product And Claim For Negligent Design/Distribution All Fail Because The Undisputed Facts Show That Jackson Subjectively Appreciated The Danger Presented By The Splitter's Side Knives.***

Jackson's Opposition exclusively relies on the contention that Jackson did not subjectively appreciate the danger presented by the Splitter's side knives[4], or for that matter any

---

[4] The Splitter's side knives are the only knives implicated in clearing debris and are associated with the position of "Chunk Puller," the position on the Splitter line Jackson was manning the day of the accident.

4

risk at all while working as a chunk puller at Block USA.[5] Opposition at 20, 25, 41, and 44. At the summary judgment stage however, Jackson must "**designate specific facts showing that there is a genuine issue for trial.**" *Chase v. Kawasaki Motors Corp., U.S.A.*, 140 F.Supp.2d 1280, 1284 (M.D. Ala. 2001); *See* Amended Scheduling Order at § 2. Here, the undisputed facts show that as a matter of law Jackson subjectively appreciated the danger presented by the side knives and summary judgment is appropriate.

Alabama law is clear that a seller "is under no duty to warn a user of every danger which may exist during the use of the product, *especially where the danger is open and obvious.*" *Gurley v. American Honda Motor Co., Inc.*, 505 So.2d 358, 361 (Ala. 1987) (emphasis added); *see Brest v. Chrysler Corp.*, 939 F.Supp. 843, 849 (M.D. Ala. 1996); *see Abney v. Crosman Corp.*, 919 So.2d 289, 294 (Ala. 2005). There "is under no duty to warn when the danger associated with a product is obvious." *Brest*, 939 F.Supp. at 849; *Abney*, 919 So.2d at 294.

"In order to establish assumption of the risk as a matter of law, the evidence must show that the plaintiff discovered the alleged defect, was aware of the danger, proceeded to unreasonably use the product, and was injured." *Sears v. Waste Processing Equip., Inc.*, 695 So.2d 51, 53 (Ala. Civ. App. 1997).

"To establish contributory negligence as a matter of law, a defendant seeking summary judgment must show that the plaintiff put himself in danger's way and that the plaintiff had a conscious appreciation of the danger at the moment the incident occurred." *Sears*, 695 So.2d at 53; *see Rowden v. Tomlinson*, 538 So.2d 15, 18 (Ala. 1988); *Wallace v. Doege*, 484 So.2d 404,

---

[5] Jackson's argument that he failed to subjectively appreciate the risk goes to each of the three main theories advanced by Besser in its Motion for Summary Judgment: (1) open and obvious; (2) assumption of the risk and (3) contributory negligence. For this reason, they are addressed together in the Reply.

5

406 (Ala. 1986); *Charpie v. Lowes Home Centers, Inc.*, 930 F.Supp. 1498, 1502 (M.D. Ala. 1996).

Each determination on summary judgment—open and obvious, assumption of the risk and contributory negligence—depends on the plaintiff's ***subjective*** knowledge. *Id.*; *Abney*, 919 So.2d at 295; *Ammons v. Tesker Mfg. Corp.*, 853 So.2d 210, 217 (Ala. 2002).[6]

### 1. The Undisputed Facts Show That The danger Presented By The Splitter's Side Knives Was Subjectively Known To Jackson.

A critical undisputed fact is that on Mr. Jackson's first day at Block USA, Mr. Mackey, the Plant Manager for the last seventeen years, warned Jackson that the Splitter could cut off a person's fingers. Ex. B [Jackson Dep. at 48: 1-12]. Mr. Mackey showed Jackson his right hand, which was missing the middle, ring and little fingers, and explained to him that he had lost his fingers on the Splitter and that Jackson should be careful. Ex. B [Jackson Dep. at 48: 1-12]; Ex. C [Mackey Dep. at 56: 18-23]. After receiving Mr. Mackey's warning, Jackson testified that its effect on him was to be careful in working as a Chunk Puller. Ex. B [Jackson Dep. at 146: 16-23].

Less than three months after receiving Mr. Mackey's stark warning, Jackson's accident occurred. The warning resonated with Jackson because he testified it caused him to be more

---

[6] Jackson's assertion that the open and obvious doctrine is inapplicable at this stage of the litigation is unfounded. Opposition at 20. Under the AEMLD, when a defendant is relieved of its duty to warn under negligence principles by the plaintiff's subjective knowledge of the condition, the defendant has a complete affirmative defense under the AEMLD. *Id.*; *see also Ex parte* Chevron Chem. Co., 720 So.2d 922, 929 (Ala. 1998). As the Alabama Supreme Court has recognized, "[t]he fine distinction between an affirmative defense and the lack of a duty to warn generally makes little, if any, difference in the assessment of the merits of a product liability action." *Chevron Chemical Co. v. Chevron Chemical Co.*, 720 So.2d 922, 927n.4 (Ala. 1998). Put differently, "[t]he fact we treat the open-and-obvious defense as an affirmative defense in AEMLD cases, but as obviating the defendant's duty in an negligence case is perhaps the manifestation of a logical inconsistency. *Abney v. Crosman Corp.*, 919 So.2d 289, 295 (Ala. 2005).

6

careful as a Chunk Puller. In these circumstances, Jackson must be charged with subjective knowledge of the Splitter's capacity to cause injuries to his hands.

In addition, Mr. Jackson's deposition admissions also establish his subjective knowledge of (1) the danger presented by the Splitter's side knives; (2) the danger presented by the Splitters side knives when clearing debris; and (3) the danger presented by the Splitter's side knives when trying to beat the Splitter's three-second, automatic cycle. Jackson testified:

> Q: *But you had seen that block being split before, correct?*
> A: *After I started working there, yes, sir.*
> Q: *And had you seen the side knives split the block before your accident?*
> A: *Yes.*
> Q: *So you saw that the side knives were sharp, correct?*
> A: *I wouldn't say they were sharp…they are a blunt-type blade.*
> Q: ***If you put your hand in there and [the] side knives closed, would it injure your hand?***
> A: ***Well, of course.***
> Q: ***And you knew that before this accident, didn't you?***
> A: ***Of course, I knew that.***
>
> Q: *In other words, if that block comes in there while your hand is there, you know before you were injured that it would hurt your hand, isn't that true, and badly hurt it?*
> A: ***I knew it could hurt you.***

Ex.B [Jackson Dep. at 20: 5-23]; *Id.* at 44: 3-9.

> Q: *Every time before this, were you trying to beat the cycle? In other words, when you put your hand in there you knew if you didn't get it out quickly, something could happen?*
> A: ***Why sure.***
>
> Q: *You knew that if you didn't beat the cycle, it would injure your hand badly; isn't that true?*
> A: *Well,* ***it's just commonsense,*** *but yes.*
>
> Q: *And you know it's a very quick process before this cycle starts again and those side knives split that block, and you know a block is coming right behind it; isn't that true?*
> A: ***Yeah, that's true.***
>
> Q: *Then once the block is split, another block is coming in there to be split again?*
> A: *It will be coming in there.*
> Q: *Is that true?*
> A: *Yes.* ***That's why you have to be quick about it. Get in there and out.***

7

Ex. B [Jackson Dep. at 53: 7-11]; *id.* at 43: 11-14, 4-9, 42: 3-8.

The Jackson testimony quoted on page 21 of the Opposition came only after Jackson made the above admissions, his counsel objected and Mr. Jackson stated that he refused to continue answering questions and he spoke to his counsel. Ex. B [Jackson Dep. at 44: 10-23, 45: 1-7]. To continue the questioning, the court reporter read back the question *"[i]n other words, if that block comes in there while your hand is there, you know before you were injured that it would hurt your hand, isn't that true, and badly hurt it?"* but this time Jackson changed his answer to the following:

> A: *Well, it never really crossed my mind because it hadn't happened before, I mean, as far as getting hurt. I mean it really didn't cross my mind.*

Nevertheless, this testimony, along with Jackson's testimony that "[he] felt safe" and that "[he] had time to do what [he] was doing" is not sufficient to create a genuine issue of material fact on the issue of whether Jackson subjectively appreciated the danger presented by the Splitter's side knives in light of his deposition testimony and Mr. Mackey's warning.

In *Entrekin*, the Alabama Supreme Court foreclosed Jackson's attempt here to defeat summary judgment when the court recognized that even though the plaintiff testified *"that he did not think he would get hurt, the record is clear that he knew that the method he was using [to do his job] was dangerous." Entrekin v Atlantic Richfield Co.*, 519 So.2d 447, 450 n.5 (Ala. 1987) (emphasis added); *see also Motley v. Bell Helicopter Textron, Inc.*, 892 F.Supp. 249, 254 (M.D. Ala. 1995) ("The court has no doubt that Motley was probably operating under the constraints of time when he chose to disregard the danger associated with performing the adjustment so close to the exposed swashplate. However, it was abundantly clear that it was dangerous to do so.

8

Any rational person would have recognized that fact. For this reason, Motley cannot hold [the defendant] liable for failing to warn him of a hazard that was so open and obvious.").[7]

Like *Motely* and *Entrekin*, Jackson cannot escape summary judgment when his own testimony reveals that he subjectively appreciated the danger presented by the side knives and that clearing debris from them, with his hand, exposed him to significant risks—significant risks that had been demonstrated to him by Mackey. Jackson admits it was "commonsense" that when working as a Chunk Puller if he did not "beat the cycle" he would badly injure his hand. As Jackson described his job, **"that's why you have to be quick about it. Get in there and out."** The undisputed facts show that Jackson subjectively knew of the danger presented by the side knives and may not hold Besser liable for his injuries under any theory, including failure to warn, the AEMLD and negligence principles.

### 2. The Danger Presented Is The Splitter's Side Knives, Not Jackson's Glove Becoming Caught On A Bolt.

Recognizing the precarious legal position his deposition testimony creates, Jackson mischaracterizes the issue presented in the defendants' briefs, which was the danger presented by the Splitter's side knives. Instead, Jackson describes the issue as "the danger of getting [his glove] caught on the bolt." Opposition at 20. It is a matter of common sense that one's glove becoming caught on a bolt is not in itself dangerous. The real danger, and the only danger

---

[7] Jackson directs the Court to *Mathis v. Harrell Co.*, 828 So.2d 248 (Ala. 2002) which he contends is instructive on the issue of appreciation of danger in a failure to warn case. However, *Mathis* is easily distinguished from the case at hand. The key difference in *Mathis* is that before Mr. Mathis' accident he believed the tramper cylinder was in the *lowered* position, a position from which it could not fall and a position he believed presented no danger to him. *Mathis*, 828 So.2d 248, 252 (Ala. 2002). However, unknown to Mr. Mathis, the tramper cylinder was in fact in the *raised* position. *Id.* Thus, when Mr. Mathis cleared the cylinder latch jam as he had seen others do before (without incident) he did not know or appreciate the danger of the tramper cylinder crashing down from the raised position and causing him injury. *Id.* Here, the facts are dissimilar. Jackson admitted that he would suffer injury if the Splitter's side knives closed on his hand. There is no evidence that Jackson was ignorant of how the side knives functioned. Mr. Mathis did not appreciate the danger because he did not know of it. In contrast, Jackson has admitted repeatedly that he knew of the danger presented by the Splitter's side knives. Simply put, *Mathis* offers no support for Jackson's case.

9

relevant to this case, is the Splitter's side knives closing on Jackson's hand when he was cleaning debris. The accident occurred because Jackson placed his hand into the Splitter's side knives area where it is undisputed the Splitter cycled automatically every three seconds. There is no evidence the Splitter malfunctioned or failed. It is undisputed Jackson voluntarily placed his right hand where the accident occurred. Doing so was the risk and the danger that Jackson appreciated. As this Court previously pointed out, "[i]t would be unreasonable to require the Defendant to apprise consumers of the danger posed by its product and provide additional warnings addressing that **same danger in each and every specific circumstance that the danger might arise.**" *Brest v. Chrysler Corp.*, 939 F.Supp. 843, 849 (M.D. Ala. 1996) (emphasis added). Contrary to Jackson's assertions, his mere rewording of the issue does not change the fact that he was aware of the specific risk that caused his injuries. Nor does it create a genuine issue of material fact sufficient to preclude summary judgment.

In another effort to avoid summary judgment, Jackson argues that he acted reasonably and did not appreciate the danger at the moment the accident occurred.[8] Again, the undisputed material facts do not support Jackson.

### 3. Jackson Did Not Act Reasonably.

First, Jackson attempts to create an issue of fact by arguing his actions were not negligent because he was following his employer's instructions. Opposition at 5. Given Jackson's appreciation of the danger presented by the side knives and receiving Mr. Mackey's stark warning that the Splitter could cut off a person's fingers, it was absolutely unreasonable—no matter what Jackson claims his employer instructed him to do—to put his hand into the Splitter's side knives area when he knew he had three seconds to remove it. As Jackson put it, **"that's**

---

[8] Besser incorporates all arguments advanced herein regarding Jackson's subjective appreciation of the risk.

why you have to be quick about it. Get in there and out." Jackson admits that it was "**common sense**" that if he did not beat the Splitter's cycle, his hand would be injured severely. Ex. B [Jackson Dep. at 43: 10-14]. Mr. Stephens and Mr. Mackey both testified to similar effect that cleaning debris from the Splitter's side knives with one's hand—without shutting off the Splitter—is unreasonable and unsafe.[9] Ex. D [Stephens Dep. at 65: 6-23, 66: 1-12]; Ex. C [Mackey Dep. at 65: 7-11, 66: 1-3]. Further, Jackson admitted that he knew how to shut off the Splitter, that nothing prevented him from doing so and on the day of his accident he failed to shut off the Splitter. Ex. B [Jackson Dep. at 24: 2-20]. Of importance to note in the Opposition is that **Jackson does not dispute that immediately after the accident, *Jackson admitted to Mr. Stephens and Mr. Mackey that he knew better than to stick his hand in the Splitter and that the accident was his fault.*** Ex. D [Stephens Dep. at 67: 1-12]; Ex. C [Mackey Dep. at 51: 15-23].

### 4. The Video, Opposition Exhibit 3, And The Accident Database, Opposition Exhibit 10, May Not Be Considered On Summary Judgment.

#### 4(a). The Video May Not Be Considered.

To put it politely, Jackson stretches the facts in an effort to make his actions appear more reasonable by implying the Splitter cycled at ten second intervals and includes a video of the Splitter as Opposition Exhibit 3 (the "Video"). Opposition at 4, 27. The Video should be disregarded. All of the individuals who were present when Jackson's accident occurred (including Jackson) have testified that the Splitter cycled approximately every three seconds. Ex. B [Jackson Dep. 38: 18-20, 153: 13-15; Ex. D [Stephens Dep. at 91: 4-6]. Despite document

---

[9] If Jackson's evidence is believed that his employer, Block USA, and John Stephens and Karry Mackey instructed Jackson to clear debris from the side knives with his hands and without shutting off the Splitter, Jackson cannot prove a defect in the Splitter proximately caused his injuries. Instead, his employer's failure to provide adequate training and a safe working environment caused his injuries.

11

requests in discovery that requested any videos of the Splitter, Jackson failed to produce a copy of the Video. Moreover, it is undisputed that when Jackson's accident occurred the Splitter was cycling every three seconds. The unauthenticated and hearsay[10] Video does not depict the Splitter as it was operating at the time of Jackson's accident and is not relevant as to the Splitter's cycle speed.[11] *See* Ex. B [Jackson Dep. 38: 18-20, 153: 13-15; Ex. D [Stephens Dep. at 91: 4-6]. Thus, for these reasons, the Court should disregard the Video.

### 4(b).   The Accident Database May Not Be Considered.

In both *Verchot* and *Uitts*, the court recognized that "proof of prior accidents or occurrences are not easily admitted into evidence." *Verchot v. General Motors Corporation*, 812 So.2d 296, 304 (Ala. 2001); *Uitts v. General Motors Corporation*, 411 F.Supp. 1380, 1383 (E.D. Penn. 1974). Nevertheless, Jackson offered Opposition Exhibit 10, which contained short reports regarding accidents on splitters that had been reported to Besser. As Besser's corporate representative testified, "[Opposition Exhibit 10] are print outs from a database that pertain to accidents that we have heard about and these pertain specifically to splitters." Opposition Exhibit 3 [Rondeau Dep. at 11: 1-6].

In *Verchot*, relying heavily on *Uitts v. General Motors Corporation*, 411 F.Supp. 1380 (E.D. Penn. 1974), the court excluded accident reports like those in Opposition Exhibit 10 and concluded they could not be used to oppose summary judgment in an AEMLD case. *Verchot*, 812 So.2d at 304-305. The *Verchot* court found that the reports included statements by owners concerning the occurrence of an accident. *Id.* at 304; *Uitts*, 411 F.Supp. at 1382-83. Moreover, like Opposition Exhibit 10, the reports in *Uitts* and *Verchot* were not the result of a continued

---

[10] The video is inadmissible hearsay under F.R.E. 801. It is an out of court assertion offered to prove the truth of the matter asserted (here, the Splitter cycles every ten seconds). No exception applies. "The general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment." *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999).

[11] Besser reserves any objections it may have to the Video, including F.R.E. 403.

12

and detailed investigation. *Id.* Also, as in the instant case, the persons in *Uitts* and *Verchot* compiling the reports did not assemble all the factual data, or determine the cause or extent of the damage. *Id.* Instead, as here, only the statements of owners were reported; there was no cross examination or further investigation. *Id.* Like *Uitts* and *Verchot*, even a brief glance at Opposition Exhibit 10 demonstrates that it was not intended to amount to a complete analysis of a particular accident or its cause.[12]

Opposition Exhibit 10 should be excluded from evidence and not considered on summary judgment because it does not have the required indicia of reliability to be admitted as a business record. *See Verchot v. General Motors Corporation*, 812 So.2d 296, 304 (Ala. 2001). Nor has Jackson pointed to any other evidence to make a showing of reliability. In addition, even if Opposition Exhibit 10 were sufficiently reliable to meet the business records exception, it still faces an insurmountable "hearsay within hearsay" problem because the information contained within the reports is the recitation of statements from non-parties, pure hearsay. Though the *Uitts* court construed this as an F.R.E. 403 issue, the rationale is the same: "[b]ecause of the nature of the reports we do not believe them to be admissions by the defendant, and therefore to permit them to be considered...would be [prejudicial and] tantamount to allowing the persons making the statements to testify against the defendant without being subject to cross examination or required to take an oath." *Uitts*, 411 F.Supp. at 1382-83.

Like the reports in *Verchot* and *Uitts*, Opposition Exhibit 10 is not admissible as a business record and does not constitute admissions by Besser. *Verchot*, 812 So.2d at 304; *Uitts*, 411 F.Supp. at 1382-83. As a general rule, hearsay cannot be considered on a motion for

---

[12] In addition, based on Opposition Exhibit 10 alone, Jackson would be unable to make the required showing that any of the accidents mentioned therein are substantially similar to his accident. Because the reports are so cursory (not to mention inherently unreliable), Jackson can present no evidence as to the particular guarding system contained on the splitters, the location of the stop buttons, how the injured workers were trained or the cause of the accidents.

13

summary judgment." *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999). Without this evidence, Jackson cannot support his claim for wantonness.

### 5. Jackson Subjectively Appreciated The Danger Presented By The Side Knives At The Moment The Accident Occurred.

Further still, Jackson attempts to make his actions appear more reasonable by arguing that **"when I stuck my hand into the machine, it wasn't operating**. I mean you had two or three seconds there…to get the debris out." Opposition at 29 (emphasis in original); Ex. B. [Jackson Dep. 152: 3-7]. There is no dispute that the Splitter operated automatically and the side knives cycled approximately every three seconds (**"that's why you have to be quick about it. Get in there and out"**). It is also undisputed that Jackson tried to pull his hand out of his glove just as the accident was occurring. Ex. B [Jackson Dep. at 52: 3-8]. This shows that Jackson consciously appreciated the danger of the Splitter's side knives at the very moment the accident occurred. As Jackson put it, "when I was starting to come out [of the Splitter's side knives area] and my glove got hung up and the machine started pushing my hand. *I tried to snatch my hand out of my glove* and I couldn't get it out. So that's how it happened." *Id.* Jackson tried to pull his hand free from his glove because he consciously appreciated the danger of the side knives injuring his hand *at the very moment* his accident occurred. Though Jackson may argue that two or three seconds was sufficient time to avoid the amputation of his fingers, here "the evidence is such that all reasonable people must reach the same conclusion"—**Jackson acted unreasonably and contributory negligence bars his claims.** *Gulledge v. Brown & Root, Inc.*, 598 So.2d 1325, 1327 (Ala. 1992).[13]

---

[13] Jackson cites *Gulledge v. Brown & Root, Inc.*, 598 So. 2d 1325 (Ala. 1992) as support to deny summary judgment based on contributory negligence. Though this case is similar to Jackson's, there is one material difference that strikes at the heart of contributory negligence under Alabama law. Alabama law requires a conscious appreciation of the danger at the moment the accident occurred. Ms. Gulledge
(continue)

14

In this case, Jackson refused to do the safe thing. Instead of shutting off the Splitter before he attempted to clean the debris—which undisputedly would have eliminated the danger presented by the side knives—he instead placed his hand into an area where he knew he had only three seconds to remove it before certain, severe injury occurred. Ex. B [Jackson Dep. at 20: 5-23, 43: 11-14]; *see* Ex. D [Stephens Dep. at 65: 6-23, 66: 1-12]; Ex. C [Mackey Dep. at 65: 7-11, 66: 1-3]. The fault based AEMLD preserves the concept of personal responsibility, for plaintiffs and defendants alike. In this case, the undisputed facts show that Jackson was at fault for this accident and Besser cannot be held liable.

## V. CONCLUSION

For the foregoing reasons, as well as the reasons set forth in Besser's Motion for Summary Judgment and supporting Brief, the Court should grant summary judgment in favor of Besser and against Jackson on each of Jackson's claims against Besser in Count I, Count II, Count III and Count IV of the Second Amended Complaint.

Respectfully submitted this 29th day of August 2007.

By: /s/ Cory M. Curtis

Thomas T. Gallion, III (ASB-5295-L74T)
Constance C. Walker (ASB-5510-L66C)
Laurin D. Quiat (Colo. Bar No. 14687)

---

(continued)
testified that "she did not have a conscious awareness that her arm could be caught and injured by the unit as she removed the iron oxide from the roller." *Gulledge*, 598 So.2d at 1329. This evidence alone would be sufficient to deny summary judgment on contributory negligence grounds under Alabama law because Ms. Gulledge did not consciously appreciate the danger at the moment her accident occurred. In contrast, Jackson consciously appreciated the danger at the moment his accident occurred because he knew he had left his hand in the side knives area too long, he tried to pull his hand free from his glove and he knew injury was imminent. In addition, when Jackson described the danger in pulling chunks he testified, "***that's why you have to be quick about it. Get in there and out.*** Ex. B [Jackson Dep. at 42: 3-8]. Moreover, Jackson had the benefit of Mackey's stark warning. Ms. Gulledge had no such similar knowledge.

               Wade A. Mitchell (Ohio Bar No. 0030647)
               Cory M. Curtis (Colo. Bar No. 34907)
               *Attorneys for Defendant Besser Company*

**OF COUNSEL:**

**HASKELL SLAUGHTER YOUNG & GALLION, LLC**
305 South Lawrence Street
Montgomery, Alabama 36104
(334) 265-8573
(334) 264-7945

**BAKER & HOSTETLER LLP**
303 East 17th Avenue, Suite 1100
Denver, Colorado 80203
(303) 861-0600
(303) 861-7805

3200 National City Center
1900 East 9th Street
Cleveland, Ohio 44114-3485
(216) 861-7971
(216) 696-0740

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 29th day of August 2007, I electronically filed the foregoing ***Defendant Besser Company's Reply Brief in Further Support of its Motion for Summary Judgment*** with the Clerk of the Court using the CM/ECF System, which will send notification of such filing upon the following:

S. Mark Andrews  
Morris Cary Andrews Talmadge & Jones, LLC  
3334 Ross Clark Circle  
P.O. Box 1649  
Dothan, AL 36302  

Steadman S. Shealy, Jr.  
Shealy, Crum & Pike, P.C.  
2346 West Main Street, Suite 1  
P.O. Box 6346  
Dothan, AL 36302  

                                                                   By: /s/ Cory M. Curtis