**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| DAVID JACKSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 2:06cv412-WHA |
| | )          (WO) |
| E&R MANUFACTURING CO., INC. and | ) |
| BESSER COMPANY, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This cause is before the court on a Motion for Summary Judgment filed by Defendant E&R Manufacturing Co, Inc. (Doc. #46) and a Motion for Summary Judgment by Defendant Besser Co. (Doc. # 49).

The Plaintiff, David Jackson, filed a Complaint, which he amended twice, bringing claims against E&R Manufacturing Company, Inc. ("E&R") and Besser Company ("Besser") for violation of the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD") (Count One), negligence (Count Two), wantonness (Count Three), negligence, recklessness, wantonness and/or willfulness (Count Four), and claims against a defendant who has now been dismissed, Karry Mackey (Count Five).

The Plaintiff is a citizen of Georgia. E&R is incorporated in Indiana and has its principal place of business there. Besser is incorporated in Michigan and has its principal place of business there. Karry Mackey, who has been dismissed, is a citizen of Alabama. There is no dispute that the Plaintiff seeks the amount in controversy required for an exercise of diversity

jurisdiction. Accordingly, this court has diversity subject matter jurisdiction in this case. *See* 28 U.S.C. § 1332(a)(1).

Defendants E&R Manufacturing Co., Inc. and Besser Company have moved for summary judgment as to all of the claims asserted against them.

For the reasons to be discussed, the Motions for Summary Judgment are due to be DENIED.

## II.  SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to

interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, the evidence of the non-movant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

### III. FACTS

The submissions of the parties establish the following facts, viewed in a light most favorable to the non-movant:

The Plaintiff, David Jackson, was an employee of Able Body Temp Services and was stationed at Concrete & Asphalt Construction/Couch Ready Mix USA, which is also referred to as Block USA ("Couch/Block"), in Andalusia, Alabama. Jackson was employed as a chunk puller on the Splitter line.

The Splitter is identified by Jackson as a model CM-24 Hydrofeed Return Corner block splitter. The Splitter is a piece of machinery which is fed concrete blocks from a conveyor and splits the blocks using knives. The Splitter was manufactured by E&R, sold by Besser, and shipped from E&R. The Splitter was originally designed in 1957 and the design has not been altered since that time.

When the Splitter splits concrete blocks, debris and chunks of the block can fall down beside the knives and smaller pieces can get stuck within the machine. The debris must be removed between each cycle of the knives.  The chunk puller is stationed at the Splitter to remove chunks and debris to maintain production.

Jackson has testified that he was trained by John Stephens ("Stephens"), an employee of Couch, as to how to clear debris from the Splitter.[1]  Jackson knew how to turn off the Splitter, but he has testified that he was trained by Stephens to clear debris with his hands without shutting the Splitter off to do so.  The switch to turn off the Splitter is located away from where Jackson was stationed. The warning posted at Jackson's position stated "Keep Hands Clear."

When Jackson began working, the Plant Manager, Karry Mackey ("Mackey"), showed him that he had lost three fingers working with the Splitter at an earlier time.  Mackey said that he was not looking at what he was doing at the time of his accident.

On December 17, 2004, Jackson was engaged in his usual job duties as a chunk puller on the Splitter line. Jackson reached into the Splitter to clear debris and while removing his hand between cycles, his glove caught on a bolt and he could not withdraw his hand. He tried to remove his hand from his glove but could not do it quickly enough. He suffered severe and permanent injuries to his hand which ultimately required amputation of three fingers on his dominant hand.

## IV. DISCUSSION

---

[1] This testimony is disputed by the Defendants who offer Stephens' testimony to the contrary, but the court accepts Jackson's testimony for purposes of ruling on the motions for summary judgment.

The Defendants have separately moved for summary judgment as to all of Jackson's claims against them with both assigning the same grounds, therefore, the court will address the Defendants' grounds for summary judgment together within the context of the counts for relief in the Second Amended Complaint.

### Count One–AEMLD

As stated above, Jackson's claim in Count I of the Second Amended Complaint is brought pursuant to the AEMLD. Jackson brings several theories of relief under the AEMLD, including defective design and/or distribution and failure to warn.

### Defective Design and/or Distribution

To establish a claim for a defective product under the AEMLD a plaintiff must show that the defendant placed a defective product on the market that was unreasonably dangerous and that caused injury or damage, the defendant was engaged in the business of selling the product, and the product was expected to and did reach the user without substantial change in condition. *Reynolds v. Bridgestone/Firestone, Inc.*, 989 F.2d 465 (11th Cir. 1993). A "'defect' is that which renders a product 'unreasonably dangerous,' i.e., not fit for its intended purpose . . . ." *Casrell v. Altec Industries, Inc.*, 335 So. 2d 128, 133 (Ala. 1976).

The Defendants do not dispute all of the elements of an AEMLD defective product claim, but do dispute that the Splitter was unreasonably dangerous. They contend that like a knife or an axe, the Splitter may have been dangerous, but it was not unreasonably so. E&R also points to Jackson's deposition testimony in which he is asked whether he felt the machine was unreasonably dangerous and he states that it was no more dangerous than "any other job." Plaintiff's Exhibit 9, Jackson Dep., at page 56: 15. Jackson also testified that he knew that if the

side knives closed on his hand they would injure his hand. *Id.* at page 20. The Defendants also cite to testimony from Stephens that Jackson told him after the accident that he knew better than to stick his hand in the Splitter and that the accident was his fault. Besser's Exhibit D, Stephens Dep., at page 67: 10-2.

Jackson responds that he was never aware that his hand could become caught on a bolt so that he would not be able to retract his hand from the knives while clearing debris. He has also testified that he did not feel like he was going to get hurt. Plaintiff's Exhibit 9, Jackson Dep., at page 150: 17-21.

Jackson also presents expert testimony that a safer, practical, alternative design was available to the Defendants, so that the Splitter was unreasonably dangerous. Jackson provides affidavits from Dr. Igor Paul and Dr. Farad Booeshaghi as evidence that the Splitter was unreasonably dangerous. In fact, Dr. Paul states in his affidavit that in the past he had been asked by E&R and Besser to review the design of the Splitter in connection with an accident which had occurred, and that he recommended point-of-operation guards and access only from the bottom which would be big enough to allow for debris removal with a scraping tool. His recommendations were not incorporated. Exhibit 11 at ¶ 3. He also suggests that an emergency stop button near the point of operation would have prevented Jackson's injuries. *Id.* at ¶ 5. Dr. Booeshagi also points to the absence of guards, and states that the gap between the knife and the block could be reduced. He also states that an emergency stop button could be placed at the side knives where the workers stand. Exhibit 12 at ¶ 17.

The expert testimony relied on by Jackson has been challenged by Besser. Besser states that the expert affidavits contain conclusory allegations without factual evidence to support the

6

experts' theories and, therefore, should not be considered by this court. Besser has objected to the undeveloped factual nature of the expert's conclusions and relies on cases from another judge in this district to support the argument that this court should not consider the expert affidavits. *See Bloodsworth v. Smith & Nephew, Inc.*, 476 F. Supp. 2d 1348 (M.D. Ala. 2006)(DeMent, J.) and *Browder v. General Motors Corp.*, 5 F. Supp. 2d 1267 (M.D. Ala. 1998)(DeMent, J.).

The cases cited by Besser are distinguishable from this case because, according to representations by the attorney for Jackson in his brief, depositions of the experts are being scheduled in this case. In addition, while the full basis of the experts' opinions may not have been given in their affidavits, their affidavits satisfy Rule 56 of the *Federal Rules of Civil Procedure*. Because the factual underpinning of the expert's opinions can be more fully explored in their depositions, the court will consider the experts' affidavits at this stage of the proceedings, with the understanding that any expert testimony that Jackson may seek to offer at trial will be subject to a properly raised evidentiary *Daubert* objection or motion in limine.

Based on all of the evidence presented, and viewing that evidence in a light most favorable to the non-movant, the court concludes that an issue of fact has been raised as to whether the Splitter was unreasonably dangerous.

The court now turns to the defenses upon which E&R and Besser have moved for summary judgment as to the AEMLD design/distribution claims. The Defendants contend that the defense of contributory negligence, and assumption of the risk as a form of contributory negligence, bar Jackson's claims.

Contributory negligence is established if a plaintiff has (1) knowledge of the condition, (2) appreciation of the danger, and (3) fails to exercise reasonable care with such knowledge and

7

appreciation of the danger. *See Wallace v. Alabama Power Co.*, 497 So.2d 450, 457 (Ala.1986). The "question of the existence of contributory negligence is normally one for the jury." *Wyser v. Ray Sumlin Constr. Co.*, 680 So. 2d 235, 238 (Ala.1996). Although a finding of contributory negligence may be based upon a finding of assumption of the risk, "it has long been recognized that contributory negligence may also be predicated upon the failure to appreciate the danger when there is a reasonable opportunity to do so under the circumstances." *H.R.H. Metals, Inc. v. Miller ex rel. Miller,* 833 So. 2d 18, 27 (Ala. 2002). Assumption of the risk, on the other hand, applies in cases in which it is alleged that the plaintiff failed to exercise due care by placing himself in a dangerous position with appreciation of a known risk. *Id.* Assumption of the risk requires that the defendant prove that the plaintiff had knowledge of and appreciation of the danger the plaintiff faced, and that the plaintiff voluntarily consented to bear the risk posed by the danger. *Ex parte Potmesil*, 785 So. 2d 340, 343 (Ala. 2000).

      Jackson argues that contributory negligence is not available as an affirmative defense to claims arising out of an AEMLD action where the alleged defect lies in a safety device or guard and, therefore, that contributory negligence is not available as a defense in this case, citing *Dennis v. American Honda Motor Co., Inc.*, 585 So.2d 1336 (Ala. 1991). After *Dennis* was decided, however, the Eleventh Circuit certified a question to the Alabama Supreme Court, and the Alabama Supreme Court clarified that contributory negligence is available as a defense to an AEMLD claim if the plaintiff's alleged negligence relates to the use of the product, which appears to be the case here. *See Campbell v. Cutler Hammer, Inc.*, 646 So. 2d 573, 575-76 (Ala. 1994).

Besser states that Jackson knew the Splitter's side knives were unguarded and exposed and he knew the danger if he did not get his hands out quickly while the Splitter was operating. Besser further argues that merely because Jackson allegedly was instructed by his employer to put his hands in the Splitter, it was unreasonable to do so. E&R and Besser rely on *Rowden by and Through Rowden v. Tomlinson*, 538 So. 2d 15, 17 (Ala. 1988), in which the plaintiff placed his hands near an auger mechanism even though he realized that the auger blades were dangerous. The Defendants also cite to *Wallace v. Doege*, 484 So. 2d 404 (Ala. 1986). In *Wallace*, the plaintiff's glove became caught in a fish roe saw she was operating. The court held that the plaintiff knew it was dangerous to clean the saw without turning off the power and that she put herself in danger by failing to turn off the saw.

It appears to this court that *Wallace* and other cases relied on by the Defendants are distinguishable from this case because there is evidence that, although Jackson knew that if he did not remove his hand from the Splitter in between the knife cycles, he could suffer serious injury, he was not aware that there was something within the Splitter, the bolt, which could prevent him from removing his hand quickly enough to escape injury. He testified that as far as merely putting his hands inside the machine, it had not crossed his mind that he would be hurt. Plaintiff's Exhibit 9, Jackson Dep. at page 45: 19-22. Jackson maintains that he was trained to reach into the knives with his hands to clear debris without shutting the machine off, that he had seen others reach in without sustaining injury, and that he had done so previously without injury.

The evidence before this court indicates that this case is more like *Gulledge v. Brown & Root, Inc.*, 598 So. 2d 1325 (Ala. 1992), a case relied on by Jackson, than the cases cited by the Defendants. In *Gulledge*, the plaintiff was an employee who was instructed not to shut down a

9

piece of equipment in order to clear it, but to keep it running and to follow a demonstration by a person in the maintenance department to ensure production. The demonstration involved a method of cleaning rollers of a conveyor, while the machine was operating, by inserting an arm through the handrails and sticking a hand into a gap to chip away at materials which had collected. The cleaning method was carried out by other employees. The plaintiff used the cleaning method and was injured when her right hand and arm were caught in the conveyor. The plaintiff stated that she was aware of the dangers, but she relied on her supervisor's instruction that the procedure was in accord with safety standards. She also stated that she was not shown any alternative method of cleaning that would be safer, and that she did not have a conscious awareness that her arm could be caught and injured by the unit as she removed iron oxide from the roller by the method she had been told to use. The trial court agreed that assumption of the risk had not been shown, in view of the plaintiff's argument that she had been ordered to use the cleaning method she used, but the court reasoned that contributory negligence does not require a showing of a voluntary, affirmative exposure to the danger and granted summary judgment in favor of the defendant. *Id.* at 1326-27.

The Alabama Supreme Court reversed the grant of summary judgment on the basis of contributory negligence, reasoning that the plaintiff was aware of danger in the procedure, but that awareness did not establish contributory negligence. *Id.* at 1330. Noting that summary judgment based on contributory negligence is seldom proper, because questions of negligence are almost always within the province of the jury, the court stated that there was a question of fact created by the facts that the cleaning method used by the plaintiff was demonstrated to her

and the method was actually used, and that reasonable people could disagree as to whether the plaintiff acted with ordinary care under the circumstances. *Id.*

In its Reply, Besser admits that *Gulledge* is a factually similar case, but contends that this case is distinguishable because Jackson consciously appreciated the danger at the moment the accident occurred, and because he had the benefit of Mackey's graphic warning. The court concludes, however, that the facts viewed in a light most favorable to Jackson fall within *Gulledge*. Under *Gulledge*, the jury in this cause must determine reasonableness because, viewing the evidence in a light most favorable to the Plaintiff, Jackson had been trained by an employer to clean the Splitter without turning it off, he saw this method demonstrated by others, had previously performed it safely himself, and he was shown no safer way to do his job.

In support of the argument that assumption of the risk bars Jackson's claims as a matter of law, Besser argues that Jackson tried to pull his hand out of his glove just as the accident was occurring, so Jackson consciously appreciated the danger of the knives at the moment the accident happened. Obviously, he appreciated the danger when the knives closed on his hand, however, Jackson's explanation of his understanding of the danger is this: he "felt safe about it" when he stuck his hand into the machine because it was not operating at the time. Exhibit 9 at page 152: 3-11. Viewing the evidence in a light most favorable to Jackson, he did not appreciate the danger at the time he stuck his hand into the Splitter. Focusing on his appreciation of the danger at the time his glove became stuck ignores his testimony that at the time he acted, that is when he placed his hand into the Splitter, he did not appreciate the danger posed by the Splitter.

Failure to Adequately Warn

A claim for failure to warn requires a plaintiff to show that (1) the defendant had a duty to warn the plaintiff regarding the danger when the product is used in its intended or customary manner, (2) the warning the defendants provided breached that duty because it was inadequate, and (3) the breach proximately caused the plaintiff's injuries. *Campbell v. Robert Bosch Power Tool Corp.*, 795 F. Supp. 1093, 1097 (M.D. Ala. 1992).

E&R argues that the warning "Keep Hands Clear" was itself sufficient. E&R states that the warning sticker posted on the splitter was in plain sight of Jackson, and although it may not have been the best possible warning, it was sufficient because it notified Jackson of the dangers associated with placing his hands in the machine.

Jackson cites to the testimony of Duane Rondeau ("Rondeau"), the Director of Technical Services with Besser, in which he is asked whether the warning "Keep Hands Clear " met a particular set of safety standards. Rondeau testified that the warning does not comply with the safety standards because, among other things, it does not identify the hazard. Plaintiff's Exhibit 4 at page 183:18. Jackson testified in his deposition that he understood the warning "Keep Hands Clear" to mean that one should not stick one's hand in the machine while it was operating. He also clarified that in his view, the Splitter was not operating when he put his hand into it because it was between cycles. *Id.* at page 154:16-20; 152: 3-4. Jackson also has cited to expert testimony that although adequate warnings and instructions would not have remedied the defective design, they would have prevented the accident in this case. *See* Plaintiff's Exhibit 11 at ¶ 7. The court concludes, therefore, that there is a question of fact on this point.

Besser argues that Jackson's AEMLD failure to warn claim fails because the danger was open and obvious and that there is no duty to warn about a danger which is open and obvious,

citing cases such as *Gurley v. Am. Honda Motor Co., Inc.*, 505 So. 2d 358, 361 (Ala. 1987). Jackson responds that he need not prove that the danger was not open and obvious to establish a duty under the AEMLD, citing *Bean v. BIC Corp.*, 597 So. 2d 1350, 1353 (Ala. 1992), which states that "open and obvious" relates to the defenses and not the defendant's duty. Besser argues in response that Alabama has recognized that there is no difference between the affirmative defense and the lack of a duty in a product liability action, citing *Ex parte Chemical Co.*, 720 So. 2d 922, 927 n.4 (Ala. 1998).

Regardless of whether there is a divergence in Alabama case law, the Eleventh Circuit has relied on the line of cases stating that there is no duty to warn when the danger is obvious. *See Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183, 1196-97 (11th Cir. 2004). Therefore, the court will analyze this case under the line of cases that view the question of the open and obvious nature of a hazard in the context of the duty to warn.

Besser points out that whether a danger is open and obvious depends on a plaintiff's subjective knowledge. Besser and E&R rely on Jackson's deposition testimony to demonstrate that he was aware of the danger presented by placing his hands near the side knives. Jackson was asked in his deposition whether he was aware that if he put his hand in the machine and the knives closed, it would injure his hand, and he said that of course he knew that. Plaintiff's Exhibit 9, Jackson Dep., at page 20: 18-20. He also testified that he knew if he did not get his hand out quickly that something could happen. *Id.* at 53:7-11. The Defendants argue, therefore, that there was no duty to warn Jackson of this open and obvious danger.

Jackson argues that he has created a question of fact as to whether the danger was open and obvious to him because there were no warnings on the machine which spoke to the clearing

13

of debris, even though clearly debris has to be cleared from the machine, and he had been trained to clear debris with the machine running. Jackson also says there is no evidence or testimony which establishes that Jackson knew his glove would get caught on a bolt.

Besser argues that it is a mischaracterization of the issue presented in the defendants' briefs to argue that the danger being warned of was Jackson's hand becoming caught on a bolt. Besser cites *Brest v. Chrysler Corp.*, 939 F. Supp. 843, 849 (M.D. Ala. 1996), and argues that it did not have a duty to warn about every conceivable danger posed by the Splitter. In *Brest*, however, this court granted summary judgment to the defendant where the plaintiff asserted that a defendant's warning about the cloth cover for a vehicle was insufficient because it failed to convey the danger posed by its cover when the cover is used in conjunction with a vehicle with an increased propensity to roll over. In other words, *Brest* involved a contention that an additional warning was necessary because a separate product posed a danger which contributed to the danger of the challenged product.

*Brest* is not analogous in this case because Jackson has argued that the Splitter itself was unreasonably dangerous and that he was unaware of the danger posed by the bolt which caused him to be unable to remove his hand, not that the Splitter posed an additional danger when combined with another product that itself posed a danger.

It is somewhat unclear exactly how Jackson seeks to define his failure to warn claim. He has argued that he thought the warning which said "Keep Hands Clear" only referred to the machine while it was running, and that he subjectively thought that as long as he worked quickly, he could put his hands in the machine as he was trained without injury. He has presented testimony from Rondeau, as discussed above, and experts which supports this theory.

Jackson also has argued, however, that he was not subjectively aware that there was something within the machine that could catch his glove while the machine was between cycles and keep it there so that it was injured when the knife cycle began. The court concludes, however, that under either theory, viewing the evidence in a light most favorable to Jackson, a question of fact has been created as to this claim.

Besser also argues that even if it had warned Jackson, he would not have heeded the warning, entitling Besser to summary judgment. Besser cites *Chase v. Kawasaki Motors Corp., USA*, 140 F. Supp. 2d 1280, 1287 (M.D. Ala. 2001), for the proposition that there has to be evidence that a warning would have been heeded and would have prevented the accident. Besser argues that accepting Jackson's testimony as true that he was trained to clear debris while the Splitter was operating, he would not have followed any warning to the contrary because he testified that he had to complete his job. Plaintiff's Exhibit 9, Jackson Dep., at page 49:1-3.

There was no warning to Jackson not to clear the Splitter while it was running. Jackson argues, therefore, that he was following his training to complete his job, but had there been an adequate warning, he would not have been trained to put his hand into the Splitter while it was running in order to do his job. The court concludes that, viewing the evidence in a light most favorable to the non-movant, there is a question of fact sufficient to preclude summary judgment on the failure to warn claims.

Count Two–Negligent Design/Distribution and Failure to Warn

The Defendants have argued that Jackson cannot proceed on state law claims outside of his AEMLD claim. The Alabama Supreme Court, in answering a question certified to it by the Eleventh Circuit, has stated as follows:

> It must be remembered, however, that the AEMLD, as established in *Casrell* and *Atkins* . . . is "an example of judicial legislation," not of legislative enactment. *Keck v. Dryvit Sys., Inc.*, 830 So.2d 1, 8 (Ala. 2002). This Court warned last year in *Keck* that "[j]udicial decision-making should not be seen as the opportunity to legislate." 830 So. 2d at 8. Alabama remains a common-law state, and therefore common-law tort actions "so far as [they are] not inconsistent with the Constitution, laws and institutions of this state ... shall continue in force, except as from time to time ... may be altered or repealed by the Legislature." § 1-3-1, *Ala.Code* 1975. We will not presume to so define the boundaries of the judicially created AEMLD so that it subsumes the common-law tort actions of negligence and wantonness against the retailer defendants.

*Tillman v. R.J. Reynolds Tobacco Co.,* 871 So. 2d 28, 34-35 (Ala. 2003). The court concludes, therefore, that Jackson can proceed on his state tort theories outside of his AEMLD claim.

To prove negligent design under Alabama law, a plaintiff may prove that a safer, practical, alternative design was available to the manufacturer at the time it manufactured its product. *Beech v. Outboard Marine Corp.*, 584 So. 2d 447, 450 (Ala. 1991). Based on the evidence discussed above, the court concludes that a question of fact has been raised which precludes summary judgment on this issue.

Where a plaintiff alleges a defendant's negligent failure to warn, the plaintiff must establish the elements for recovery under a negligence theory, namely: duty, breach of that duty, proximate causation, and injury/damage. *Deere & Co. v. Grose*, 586 So.2d 196, 198 (Ala.1991). The Defendants have not advanced grounds for summary judgment on these claims apart from the grounds discussed above in the context of the AEMLD claim. Therefore, based on the evidence discussed above, the court concludes that a question of fact has been raised which precludes summary judgment on the negligence claims.

### Count Three–Wanton Design/Distribution and Failure to Warn

Jackson has asserted wanton design, distribution, and failure to warn claims against Besser and E&R.  The Defendants initially did not challenge the elements of a wantonness claim, but rather moved for summary judgment on the basis of the defenses on which they moved for summary judgment as to the AEMLD and negligence claims.  Jackson, however, pointed to evidence in support of his wantonness theory and E&R argued in its reply that Jackson's evidence does not demonstrate wanton or reckless disregard.

Wantonness is the conscious doing of some act or the omission of some duty while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result.  *McDougall v. Shaddrix*, 534 So. 2d 228, 231 (Ala. 1988). Jackson has presented expert testimony in the form of Dr. Paul and Dr. Booeshaghi's affidavits which he offers as evidence to support a finding of wantonness.  The court concludes that Jackson's expert testimony on this issue is sufficient to create a question of fact which precludes summary judgment on the wantonness claims.[2]

### Count Four–negligence, recklessness, wantonness and/or willfulness

Count Four incorporates the previous paragraphs of the Second Amended Complaint and merely alleges that the Defendants acted negligently, recklessly, wantonly and/or willfully. These claims appear to be redundant of those already discussed.  Any claims which are merely redundant of claims asserted in other counts are due to be DISMISSED.

## V. CONCLUSION

---

[2] The court notes that Jackson has offered other evidence that this court has not considered in ruling on the Motions for Summary Judgment and as to which the Defendants have objected.  The evidentiary arguments raised with respect to evidence the court has not considered have not been ruled on, and the Defendants are free to raise objections in appropriately filed motions in limine prior to trial.

For the reasons discussed above, it is hereby ORDERED as follows:

1. The Motion for Summary Judgment filed by Defendant E&R Manufacturing Co, Inc. (Doc. #46) and the Motion for Summary Judgment by Defendant Besser Co. (Doc. # 49) are DENIED.

2. The redundant claims asserted in Count Four of the Second Amended Complaint are DISMISSED.

3. The Motion to Request the Court to Rule on the Defendants' Motions for Summary Judgment Prior to Mediation (Doc. #64) is DENIED as moot.

Done this 25th day of September, 2007.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE